1   GORDON SILVER
    John P. Desmond
2   Nevada Bar No. 5618
    Justin J. Bustos
3   Nevada Bar No. 10320
    100 West Liberty Street
4   Suite 940
    Reno, NV 89501
5   Tel:  (775) 343-7500
    Fax:  (775) 786-0131
6   Email: jdesmond@gordonsilver.com
    Email: jbustos@gordonsilver.com
7
    REID COLLINS & TSAI LLP
8   R. Adam Swick (*pro hac vice to be filed*)
    J. Benjamin King (*pro hac vice to be filed*)
9   1301 S. Capital of Texas Hwy, Suite C300
    Austin, Texas 78746
10  Tel: (512) 647-6100
    Fax: (512) 647-6129
11  Email: aswick@rctlegal.com
    Email: bking@rctlegal.com
12
13  *Counsel for Plaintiffs*

14                  **UNITED STATES DISTRICT COURT**
                        **DISTRICT OF NEVADA**
15

16  ENRIQUE MARTINEZ, MICHELLE
    MARTINEZ, and SUNSHINE MARTINEZ-        **CASE NO.**
17  VALDEZ, Individually and on Behalf of a Class
    of Similarly Situated Individuals,

18              Plaintiffs,

19      vs.                                  **CLASS ACTION COMPLAINT**

20  MXI CORP., MARTIN J. BROOKS,
    JEANETTE L. BROOKS, ANDREW BROOKS,
21  DR. GORDON PEDERSEN, CONNIE
    HOLLSTEIN, SHERMAN SMITH, RUTH
22  SMITH, WILLIAM "BUTCH" SWABY,
    CAROLYN SWABY, FELIX GUDINO, LISA
23  GUDINO, GLEN OVERTON, KIM OVERTON,
    ADAM PAUL GREEN, MELANNIE GREEN,
24  JEREMY REYNOLDS, KAREN REYNOLDS,
    DERRICK WINKEL, NAOMI WINKEL, PAUL
25  ENGEMANN, SUZANNE ENGEMANN,
    PAULA PRITCHARD, KATHLEEN ROBBINS,
26  IAN MURRAY, JUDY MURRAY, SANDY
    CHAMBERS, and KERRY DEAN,
27
                Defendants.
28

**Gordon Silver**
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

Enrique Martinez, Michelle Martinez, and Sunshine Martinez-Valdez (collectively, "**Plaintiffs**"), individually and on behalf of a class of similarly situated individuals, file this complaint against MXI Corp. ("**MXI**") and the defendants set forth in paragraphs 20-39 below (the "**Individual Defendants**", and, together with MXI, the "**Defendants**").

## I.    JURISDICTION AND VENUE

1.      Plaintiffs bring individual and class claims under Federal Racketeer Influenced and Corrupt Organizations Act ("**RICO**"), 18 U.S.C. § 1961 *et seq.*; Nevada's statutory prohibition against pyramid schemes (Nev. Rev. Stat. §§ 598.100-120); and Nevada's Deceptive Trade Practices Act (Nev. Rev. Stat. §§ 598.0920, 598.0923).

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs bring claims under RICO.   Pursuant to 28 U.S.C. § 1367, this Court may exercise jurisdiction over Plaintiffs' state law claims because those claims and the RICO claims form a part of the same case or controversy under Article III.

3.      Defendants' public statements establish that the amount in controversy exceeds $5,000,000:

- According to Defendant Adam Paul Green, MXI sold $700,000 in product to Participants in 10 minutes on May 5, 2013, and sold $2.4 million worth of a single type of product over 45 days.

- Defendant Jeanette Brooks claims on her LinkedIn page that MXI has sold over $1 billion worth of product since its founding.

- In a 2010 court filing, MXI stated that it had 50,000 salespeople (*i.e.,* Participants) in its network.   Assuming MXI had roughly the same number of Participants during the class period, and in light of the amounts MXI charges its Participants (discussed in detail below), the amount in controversy easily exceeds $5,000,000.

4.      Federal subject matter jurisdiction also arises under 28 U.S.C. § 1332(d) because (i) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (ii) members of the proposed Class are citizens of different states from some defendants, (iii) there are more

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

2 of 54

than 100 members of the proposed Class, and (iv) fewer than one-third of the members of the

proposed Class are residents of Nevada.

  5.  All Defendants are subject to the personal jurisdiction of this Court.

- MXI was incorporated in Nevada, maintains its headquarters in Nevada, and operates out of Nevada.

- Defendants Martin J. Brooks, Jeanette L. Brooks, and Andrew Brooks reside in Nevada.

- The MXI marketing scheme that is the subject of this Complaint was operated out of Nevada, and all Individual Defendants purposefully participated in the operation of the marketing scheme.

- The Rules and Regulations issued by MXI and agreed to by the Individual Defendants designate Nevada as the law governing the Rules and Regulations. The Rules and Regulations further provide that "[a]ny lawsuits with respect to the matters raised herein shall be brought in a state or federal court of general jurisdiction located in Washoe County, Nevada."

- The MXI product the Individual Defendants encouraged the Plaintiffs to buy was sold from Nevada.

- On information and belief, the Individual Defendants participated in multiple in person and telephonic meetings held in Nevada regarding the operation of the MXI pyramid scheme at issue in this case.

  6.  In accordance with 18 U.S.C. § 1965(a) and (b), all of the Defendants are subject

to this Court's jurisdiction in that they "transact affairs" in Nevada.

  7.  Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the

events or omissions giving rise to the Plaintiffs' claims occurred in this District.   Under 18

U.S.C. § 1965(a) and (b), venue is proper for Plaintiffs' RICO claims because MXI and other

Individual Defendants reside in this district and the ends of justice require that other parties

residing in any other district be brought before this Court.

## II.  <u>INTRODUCTION</u>

  8.  MXI is a pyramid scheme.   Like all pyramid schemes, it rewards its managers at

the expense of its participants.   MXI has bilked millions of dollars from thousands of its

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

3 of 54

participants.  Plaintiffs are three such victims, and they bring this class action to remedy the damage MXI has caused.

9.     Pyramid schemes are fraudulent by their very nature.  Although pyramid schemes may claim to sell legitimate products or provide a legitimate service, the schemes do not generate meaningful income from legitimate operations.  Instead, they generate income by convincing new people to participate in and contribute to the scheme.  Much of the participants' contributions are siphoned away to benefit the scheme's promoters and managers.  To keep money flowing in, participants are encouraged to bring in more participants, whose investments are used to compensate older participants and, of course, the scheme managers.  There being no or little income coming in except from participant contributions, and the scheme managers having paid themselves with participant contributions, the participants, as a group, necessarily receive less than they contribute.  The vast majority of scheme participants are thus doomed to lose their investments in the scheme from the outset.

10.     MXI is a pyramid scheme disguised as a multi-level marketer ("**MLM**") of supposedly "healthy" chocolate (called "Xocai" (*show-sigh*) chocolate).  Participants in the MXI MLM (the "**Participants**") pay MXI fees and continuously purchase chocolate for the right to sell the chocolate at retail and to receive bonuses for recruiting new Participants.

11.     Although the wholesale price of MXI's chocolate is far higher than the retail price of most chocolate, MXI is able to sell its chocolate to the Participants because MXI tells Participants that its business model will provide them an income-producing opportunity "unlike any other," "with little risk of failure," and that will allow Participants to "pick the kind of income they want to earn."  More than just chocolate, MXI sells Participants a dream of financial prosperity.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

4 of 54

12.     But the supposed path to financial prosperity is not based on selling chocolate at retail.  Because MXI's *wholesale* prices are too high, Participants have little—if any—genuine chance of selling the chocolate at even higher *retail* prices.   Thus, Participants earn very little money from retail sales.  Instead, the money that flows through the MXI system is generated by *recruiting*. Participants make money, if at all, by recruiting new Participants (who pay fees and buy chocolate), and not by selling MXI's overpriced chocolate at retail.

13.     MXI is based on Participants endlessly recruiting.  This is why MXI does not meaningfully encourage or reward retail sales.  Indeed, the compensation paid to Participants by MXI is largely unrelated to retail sales.  Instead, MXI pays financial rewards to Participants based on their success in recruiting new Participants.  As explained by one Individual Defendant to Participants, "100%!  100% of your income comes from what?  Recruiting, right.  100% of that income."   The more new Participants a Participant recruits, and the more wholesale chocolate those recruits buy from MXI, the more the Participant is paid. Thus, MXI's true business model is based on roping in more and more Participants, each of whom is required to purchase minimum amounts of chocolate from MXI at inflated wholesale prices—and to pay mandatory fees for the privilege.  Retails sales are so irrelevant that MXI does not even track them.

14.     As explained in MXI's Compensation Plan, the "duplicative process" of having current Participants recruit new Participants (each of whom must pay mandatory fees and buy chocolate from MXI at wholesale) "is the foundation" for MXI's "Heathy Chocolate Business." But the business is not financially healthy for the Participants.  Few, if any, Participants even cover their costs.  Because the scheme promoters and managers take a significant cut for themselves, Participants necessarily make less than they invest.   MXI's own documents demonstrate that at least 95% of Participants lose money.

**Gordon Silver**
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775) 343-7500

15.     Despite the fact that all but a miniscule percentage of Participants are doomed to incur financial losses, MXI and the other defendants disseminate false and misleading statements about MXI's business to lure new Participants.  In addition, the few promoters at the top of the pyramid scheme—the less than 5% who have succeeded in lining their own pockets at the expense of the greater than 95% of Participants who lose money—cynically display their own ill-gotten gains to entice new Participants.  The Individual Defendants named herein were managers and promoters who profited handsomely from the MXI pyramid scheme and who have made dozens of public statements to entice new Participants to join MXI's scheme.  Their explicit and implicit fraudulent message is, join MXI and you too can share in the success of our chocolate business.

16.     Plaintiffs seek the certification of a class of Participants who, like Plaintiffs, became Participants in MXI's pyramid scheme and were damaged thereby from paying fees to MXI and purchasing chocolate from MXI at any time from May 1, 2011 to the present (the "**Class**").  Plaintiffs seek to hold MXI and the Individual Defendants liable for their operation and promotion of MXI's pyramid scheme pursuant to Nevada's statutory prohibition against pyramid schemes (Nev. Rev. Stat. §§ 598.100-120), Nevada's Deceptive Trade Practices Act (Nev. Rev. Stat. §§ 598.0920, 598.0923), and RICO.  Plaintiffs also seek to hold MXI and the Individual Defendants liable under RICO for the false statements made in the course of operating and promoting the pyramid scheme.

### III.     PARTIES

**A.     Plaintiffs**

17.     Plaintiff Enrique Martinez is, and at all material times was, an individual who resides in the county of Bernalillo, in the state of New Mexico.  Plaintiff Michelle Martinez is Enrique Martinez's wife.  At all relevant times, Enrique and Michelle Martinez lived together.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

18.     Plaintiff Sunshine Martinez-Valdez is, and at all material times was, an individual who resides in the county of Sandoval, in the state of New Mexico.

**B.     MXI and the Individual Defendants**

19.     Defendant MXI is a Nevada corporation headquartered in Reno, Nevada.

20.     Defendant Martin J. Brooks is an individual residing in Reno, Nevada.   Martin Brooks is the former CEO and co-founder of MXI.

21.     Defendant Jeanette L. Brooks is an individual residing in Reno, Nevada.   Jeanette Brooks is the CEO and co-founder of MXI.

22.     Defendant Andrew Brooks is an individual residing in Reno, Nevada.   Andrew Brooks is the CFO and co-founder of MXI.

23.     Defendant Dr. Gordon Pedersen is an individual residing in Pleasant Grove, Utah.  Gordon Pedersen is the Chief Education Advisor for MXI.

24.     Defendants Martin J. Brooks, Jeanette L. Brooks, Andrew Brooks, and Dr. Gordon Pedersen are collectively referred to as the "**Manager Defendants**."

25.     Defendant Connie Hollstein is an individual residing in Parker, Arizona.  According to MXI promotional material, Hollstein is a MXI Ambassador and Millionaire Member.

26.     Defendant Sherman Smith, aka Sherm Smith, is an individual residing in Zionsville, Indiana.   Defendant Ruth Smith is an individual residing in Zionsville, Indiana.  According to MXI promotional material, the Smiths are MXI Triple Diamonds and Millionaire Members.

27.     Defendant William "Butch" Swaby is an individual residing in Goodlettsville, Tennessee.   Defendant Carolyn Swaby is an individual residing in Goodlettsville, Tennessee.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

According to MXI promotional material, the Swabys are MXI Triple Diamonds and Millionaire Members.

28.    Defendant Felix Gudino is an individual residing in Lake Oswego, Oregon. Defendant Lisa Gudino is an individual residing in Lake Oswego, Oregon.  According to MXI promotional material, the Gudinos are MXI Triple Diamonds and Millionaire Members.

29.    Defendant Glen Overton is an individual residing in Provo, Utah.  Defendant Kim Overton is an individual residing in Provo, Utah.  According to MXI promotional material, the Overtons are MXI Triple Diamonds and Millionaire Members.

30.    Defendant Adam Paul Green is an individual residing in Draper, Utah.  Defendant Melannie Green is an individual residing in Draper, Utah.  According to MXI promotional material, the Greens are MXI Ambassadors and Multi-Millionaire Members.

31.    Defendant Jeremy Reynolds is an individual residing in North Salt Lake, Utah. Defendant Karen Reynolds is an individual residing in Draper, Utah.  Jeremy Reynolds is a Founding Master Distributor, MXI Ambassador, and Multi-Millionaire Member.

32.    Defendant Derrick Winkel is an individual residing in Sandy, Utah.  Defendant Naomi Winkel is an individual residing in Sandy, Utah.  According to MXI promotional material, the Winkels are MXI Ambassadors and Multi-Millionaire Members.

33.    Defendant Paul Engemann is an individual residing in Provo, Utah.  Defendant Suzanne Engemann is an individual residing in Provo, Utah.  According to MXI promotional material, the Engemanns are MXI Presidential and Millionaire Members.

34.    Defendant Paula Pritchard is an individual residing in Tampa, Florida.  According to MXI promotional material, Pritchard is a former MXI Ambassador.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

8 of 54

35.     Defendant Kathleen Robbins, aka Kathy Robbins, is an individual residing in Tampa, Florida.   According to MXI promotional material, Robbins is a former MXI Ambassador.

36.     Defendant Ian Murray is an individual residing in Toronto, Ontario, Canada. Defendant Judy Murray is an individual residing in Toronto, Ontario, Canada.   According to MXI promotional material, the Murrays are former MXI Ambassadors.

37.     Defendant Sandy Chambers is an individual residing in Winnipeg, Manitoba, Canada.  According to MXI promotional material, Chambers is a former MXI Ambassador.

38.     Defendant Kerry Dean is an individual residing in Burlington, Ontario, Canada. According to MXI promotional material and Plaintiffs' personal experience, Dean is a former MXI Ambassador.

39.     Defendants Connie Hollstein, Sherman Smith, William "Butch" Swaby, Felix Gudino, Glen Overton, Adam Paul Green, Jeremy Reynolds, Derrick Winkel, and Paul Engemann, along with their respective spouses, are collectively referred to herein as the "**Promoter Defendants**".

## IV.     PYRAMID SCHEMES ARE ILLEGAL

40.     Pyramid schemes are illegal and against public policy under Nevada law.  *See* Nevada Revised Statute ("**NRS**") § 598.110-120.  A "pyramid scheme" means:

> [A]ny program or plan for the disposal or distribution of property and merchandise or property or merchandise by which a participant gives or pays a valuable consideration for the opportunity or chance to receive any compensation or thing of value in return for procuring or obtaining one or more additional persons to participate in the program, or for the opportunity to receive compensation of any kind when a person introduced to the program or plan by the participant procures or obtains a new participant in such a program.

*See* NRS § 598.100(3).

41.     Pyramid schemes also constitute a scheme and artifice to defraud under RICO.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

42.     MXI promotes itself as a MLM—an organization that sells product through a network of salespeople who are financially encouraged to bring in new salespeople, and create their own networks of salespeople.  All MLMs bear one of the primary hallmarks of pyramid schemes—financial rewards related to recruiting new salespeople.  But not all MLMs are pyramid schemes.  The distinction lies in whether the scheme is designed to sell product to persons *outside* the scheme (*i.e.*, retail sales), or whether the scheme is designed to sell product primarily to participants *in* the scheme.  In the latter case, the participants, whether they know it or not, are simply feeding off each other.

43.     MXI is a pyramid scheme under Nevada law.  First, MXI requires Participants to pay fees for the right to purchase chocolate and participate in the MXI program (*see* paragraphs 48-59, *infra*).  Second, MXI pays its Participants much more for recruiting new Participants than for selling chocolate at retail (*see* paragraphs 60-98, *infra*).

44.     MXI has made feeble efforts to conceal the fact that it is a pyramid scheme, most notably by adopting certain policies that have no genuine substance and are mere window dressing. As described fully within, MXI's policies regarding certification of retail sales and inventory loading do not obscure or alter the essential nature of MXI's pyramid scheme (*see infra* paragraphs 99-111, *infra*).

45.     The Defendants' operation of the MXI pyramid scheme is itself illegal and actionable under Nevada law.   In addition, the Defendants have made systematic false representations regarding the legality of the scheme and the financial rewards the Participants may obtain by participating in the scheme (*see* paragraphs121-131, *infra*).  Defendants are also liable under state and federal law for their false misrepresentations, as described in more detail herein.

**Gordon Silver**
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

# V.   MXI IS A PYRAMID SCHEME

46.   MXI charges far more for its chocolate than most other chocolate distributors. For example, MXI's wholesale price (the price charged to Participants) for chocolate nuggets is 9.6 cents per gram.  (MXI's suggested retail price is far higher than that, but MXI sells most of its chocolate at wholesale prices to the Participants.)  To compare, Hershey chocolate nuggets can be bought at retail for less than one cent per gram.  The wholesale price for a Xocai peanut butter cup is $1.85.  Reese's peanut butter cups retail for less than $0.50 each.  To sell its chocolate at these inflated prices, MXI must offer something more than just chocolate (even chocolate accompanied by dubious health claims).

47.   MXI's ingenious (and illegal) scheme for selling its overpriced chocolate is to create its own customer base, the Participants, by requiring that Participants purchase MXI's chocolate to participate in MXI's supposed income-producing scheme.  MXI's focus is on selling the MXI program to Participants, not on selling MXI's chocolate to retail customers, and it sells successfully to the Participants by coupling its chocolate to a dream of financial rewards through participation in the scheme.

## A.   MXI Requires Participants to Pay Fees and Purchase Product to Participate in the MXI Scheme

48.   One of the key features of a pyramid scheme is that it requires its victims to pay money to participate in the scheme.  MXI requires payments in two forms: cash fees and required product purchases.  Worse yet, MXI actively encourages its Participants to purchase additional product to advance in the scheme.

49.   MXI's written "Policies and Procedures," "Rules and Regulations," and "Company Compensation Plan" describe MXI's scheme in detail.  Per the Policies and Procedures, MXI requires Participants to pay an application fee:  "It is required that all prospective Associates complete the Application Form and send it to MXI Corp along with their

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

11 of 54

Application Fee of $39.00."  This fee is sometimes referred to as a "Distributor Fee."  An individual must pay the Application Fee before he can purchase MXI's product at wholesale and become a Participant.  To do so, the Participant goes to MXI's "back office" through a link on MXI's website.  At the back office, the Participant can access exclusive MXI information and input his or her credit card information.

50.     Participants must also pay a $25.00 annual renewal fee, which is automatically billed to their credit cards, unless they notify MXI in writing that they wish to cancel: "Associates who do not personally renew their Distributorships, and do not notify MXI in writing prior to the renewal deadline that they do not want to renew, will be automatically renewed and charged the $25 renewal fee to the credit card on file."  MXI's written Policies and Procedures make renewal mandatory, if the Participant wants to continue to participate: "Renewing your Distributorship means you retain the right to service your retail customers, sponsor new Associates, purchase and sell MXI Corp products, receive MXI publications, and receive detailed biweekly bonus statements."

51.     These cash fees, however, represent only a small portion of the payments Participants make to MXI.  The primary tool MXI uses to bilk the Participants is the sale of chocolate.

52.     According to MXI's Policies and Procedures, Participants must buy chocolate even before they can become Participants:  "Before prospects can qualify to become an MXI Corp Associates [*sic.*], they must purchase MXI Corp products at retail.  This insures that all prospects will be familiar with MXI Corp products before they become MXI Corp Associates."

53.     Participants are required to continuously purchase chocolate after becoming Participants.  Depending on the Participant's rank within the hierarchy of Participants (discussed

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

in more detail below), a Participant must purchase either $110 or $220 of Xocai product every four weeks.

54.     Every Participant, including every Plaintiff and member of the proposed Class, paid the fees required by MXI and purchased the baseline amounts of chocolate required by MXI.

55.     But MXI extracts far more from its Participants than the cash fees and baseline chocolate purchases.  MXI swindles its Participants of far more by encouraging "**Inventory Loading**"—the purchase of product by scheme participants for the purpose of advancing in the scheme.  MXI's compensation structure encourages Inventory Loading through its *bonuses, rankings*, and *business builder option*.

56.     MXI compensates its Participants through a series of increasingly lucrative bonuses, described in more detail below.  MXI also ranks its Participants based on the amount of chocolate purchased by each Participant's "downline"—the Participants beneath the Participant in the pyramid—and the number of Participants in the downline.  The higher a Participant's *rank*, the more *bonuses* he or she is eligible to receive.

57.     A Participant can, in effect, be in his or her own downline by paying over $600 to become a "**Business Builder.**"  The "benefit" of being a Business Builder is that a Participant can establish two "business centers" directly beneath himself in the pyramid.  The Participant can purchase additional chocolate through each of these business centers to increase the chocolate purchased by the Participant's downline.  Thus, to move up in the ranks (to become eligible for (supposedly) more lucrative bonuses), the Participant can purchase more chocolate through his or her business center.  In this way, MXI's compensation structure encourages Participants to purchase more chocolate for the sole purpose of moving up in MXI's scheme—in other words, to Inventory Load.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

13 of 54

58.     Not only does MXI's compensation structure encourage Inventory Loading, but the Individual Defendants themselves also actually encouraged Inventory Loading. For example, Defendant Dean strongly encouraged some Participants (including Plaintiffs Michelle and Enrique Martinez) to increase by 10% every week the amount of product purchased by their downlines. When the Martinezes asked Defendant Dean if she meant that they should purchase the product themselves to meet the 10% increase, Defendant Dean responded: "If you die you can't do it, pretty much everything else doesn't count for an excuse."

59.     MXI was successful in encouraging Inventory Loading. Plaintiffs Michelle and Enrique Martinez and some members of the proposed Class purchased chocolate beyond the required baseline amounts for the purpose of improving their positions in the MXI scheme. Michelle and Enrique Martinez paid over $200,000 for MXI chocolate that they purchased for the purpose of moving up in the MXI ranks.

**B.     MXI Pays Participants Overwhelmingly More for Recruiting New Participants than for Retail Sales**

60.     The second key characteristic of a pyramid scheme is that it rewards recruiting overwhelmingly more than "**Retail Sales**"—the sales of product to persons who are not scheme participants. MXI's compensation of its Participants bears little relationship to Retail Sales. Instead, a Participant's compensation is based primarily on how much chocolate other Participants below him or her in the pyramid buy. Compensation is thus dependent upon recruiting new Participants who pay fees and buy chocolate and who recruit yet more chocolate-buying, fee-paying Participants into the scheme.

61.     MXI incentivizes Participants to recruit new Participants through both *eligibility for* and the *amount of* various bonuses. As mentioned above, a Participant becomes *eligible* for bonuses based on the Participant's rank, and rank is based on how many Participants are in that Participant's downline and how much chocolate is purchased by the downline. MXI also ties the

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

14 of 54

*amount* of the bonuses to recruiting: the more chocolate purchased by the Participant's downline, the greater the amount of the bonuses for which the Participant qualifies.

62.    Retail Sales, on the other hand, are encouraged with only meager incentives in comparison, making every Participant focus overwhelmingly on recruiting over Retail Sales. Indeed, MXI's Rules and Regulations admit that MXI does not even track Retail Sales.

63.    MXI's Compensation Model underscores the importance of recruiting: "The first step is simple:  achieve the rank of Royal [by recruiting two other Participants] and help others become Royals in your organization.  This simple yet powerful duplication process, is the foundation for building your Healthy Chocolate Business."

64.    Numerous examples exist on the internet where the importance of recruiting is explained to Participants.  Here are a few examples:

- One high-ranking Participant explained in a video that the purpose of the MXI program is not to make Retail Sales; rather, it is to "make every effort to follow it, they want to actively look to sign up distributors, they want to actively support those new distributors, and train them to duplicate because that's what this is all about—it's about duplication, us signing up distributors, they sign up distributors, and so on, and so on."[1]

- Promotor Defendant Connie Holstein told potential Participants: "Women, we focus on the product where the men typically make the big money in network marketing, I found out, because they build the network."[2]

- Defendant Paula Pritchard made clear to Participants that MXI is "not about chocolate"; it's about recruiting.[3]

- Promotor Defendant Paul Engemann explained to a group of Participants that "100%!  100% of your income comes from what?  Recruiting right.  100% of that income."[4]

---

[1] Http://www.dailymotion.com/video/xmkegd_jj-birden-az-on-recruiting-adam-paul-green-xocai-mlm-mxi-corp-network-marketing_lifestyle.

[2] Https://www.youtube.com/watch?v=1xT-ulzg1m4.

[3] Http://archive.constantcontact.com/fs058/1102741299767/archive/1106128514212.html.

[4] Https://www.youtube.com/watch?v=UWzERkLcLco.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

1

2

### 1.    The Ranks and the Infinity Tree

3

4

5

6

65.    A Participant moves up in the Participant ranks based on the volume of product purchased by the Participants beneath him.  By paying extra to become a Business Builder, a Participant can also, in effect, occupy two positions beneath himself and purchase product himself to satisfy volume requirements for rank advancement.

7

8

9

10

11

12

13

14

15

16

17

18

19

66.    Each Participant occupies a space in the MXI pyramid, with two "legs" branching off beneath the participant.  The Participant and his or her "legs" are referred to as the Participant's "**Infinity Tree**."  Whenever a Participant recruits another Participant, the recruited Participant is placed in one of the two legs of the recruiting Participant's Infinity Tree.  Over a period of time, one of the Participant's legs will purchase more product than the other.  MXI calls the leg purchasing less product the "lesser leg."  Based on the amount of product purchased by the Participant's "lesser leg," the Participant achieves a certain rank, which determines the Participant's eligibility for bonuses and rewards.  Thus, the Participant is incentivized to bring in more Participants and to purchase more chocolate so that the Participant can move up in the ranks.  As explained in MXI's Rules and Regulations, the ranks available to an active Participant are as follows:

20

- The Royal rank requires a Participant to recruit two more Participants;

21

22

- The Royal 500 rank requires a Participant to have $250 in Bonus Volume[5] in their lesser leg for two consecutive weeks;

23

- The Royal 1K rank requires a Participant to have $500 in Bonus Volume in their lesser leg for two consecutive weeks;

24

25

26

27

28

---

[5] According to the Rules and Regulations, the "Bonus Volume" is calculated based on the "Bonus Value" of the products purchased by the lesser leg, but is not tied to the exact dollar amount the Participants paid for MXI's product.  "For example, the suggested wholesale price on a case of product may be $100, while the Bonus Value is $80."

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

- The Executive rank requires a Participant to have (i) $1,000 in Bonus Volume in their lesser leg for two consecutive weeks and (ii) recruited an active Royal 500 [or higher] Participant in two enrollment legs;

- The Bronze Executive rank requires a Participant to have (i) $2,500 in Bonus Volume in their lesser leg for two consecutive weeks and (ii) recruited an active Royal 1K [or higher] Participant in two enrollment legs;

- The Silver Executive rank requires a Participant to have (i) $5,000 in Bonus Volume in their lesser leg for two consecutive weeks and (ii) recruited an active Executive [or higher] Participant in two enrollment legs;

- The Gold Executive rank requires a Participant to have (i) $10,000 in Bonus Volume in their lesser leg for two consecutive weeks and (ii) recruited an active Bronze Executive [or higher] Participant in two enrollment legs;

- The Platinum Executive rank requires a Participant to have (i) $15,000 in Bonus Volume in their lesser leg for two consecutive weeks and (ii) recruited an active Silver Executive [or higher] Participant in two enrollment legs;

- The Diamond Executive rank requires a Participant to have (i) $20,000 in Bonus Volume in their lesser leg for two consecutive weeks and (ii) recruited an active Gold Executive [or higher] Participant in two enrollment legs;

- The Double Diamond Executives rank requires a Participant to have (i) $25,000 in Bonus Volume in their lesser leg for two consecutive weeks and (ii) recruited an active Platinum [or higher] Participant in two enrollment tree legs;

- The Presidential rank requires a Participant to have (i) $50,000 in Bonus Volume in their lesser leg for four consecutive weeks and (ii) recruited an active Diamond [or higher] Participant in two enrollment tree legs; and

- The Ambassador rank requires a Participant to have (i) $75,000 in their lesser leg for four consecutive weeks and (ii) recruited an active Double Diamond [or higher] Participant in two enrollment tree legs.

67.    Importantly, Retail Sales are a nonfactor for rank advancement and thus for bonus eligibility.   All that matters to rank advancement is the amount of product purchased by a Participant's legs and recruiting.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

### 2.      The Bonuses

#### a.      The Infinity Bonus

68.      The Infinity Bonus pays Participants achieving the rank of Royal and higher a portion of the Bonus Volume of the purchases of the Participant's lesser leg.  Although Bonus Volume and dollar amounts are not the same, the fact is that the more product a Participant's lesser leg purchases, the greater the Infinity Bonus.

69.      MXI provides the following chart (which looks remarkably like a pyramid) in its Compensation Plan to explain the Infinity Bonus:



#### b.      The Executive Generation Bonus

70.      The Executive Generation Bonus is (theoretically) available to Participants who achieve the rank of Executive or higher, although only 15% of Participants achieve this rank.

71.      MXI awards a percentage of the Infinity Bonus earned by some of the Participants recruited by the Participant as an Executive Generation Bonus.  The higher the Participant's rank, the more "generations" MXI will consider in calculating the Executive Generation Bonus.

---

[6] *Id.* at 9.

**Gordon Silver**
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

72.     Naturally, the more Participants the Participant recruited, the more money he or she may receive as an Executive Generation Bonus.  According to one video promoting MXI's scheme created by Promotor Defendant Paul Engemann and posted on the internet by Promotor Defendant Adam Paul Green, this bonus "virtually guarantees you that you will have the support that you need to succeed in the business."[7]  Below is a picture used by MXI to explain the effect of recruiting Participants for the Executive Generation Bonus:



[8]

73.     Since only Participants can earn the Infinity Bonus, the people making up the "V" or reverse pyramid in the above illustration are Participants, not retail customers.  The Participant with the pile of money at his feet is the head of the pyramid, earning more money based on how many Participants he has recruited, how many Participants his recruits have recruited, and how much product is sold to his downlines.

74.     Neither a Participant's eligibility for the Executive Generation Bonus nor the amount of the Executive Generation Bonus is determined based on Retail Sales.

_____

[7] Http://www.dailymotion.com/video/xmpg2m_xocai-comp-plan-by-paul-engemann_lifestyle.

[8] Http://www.dailymotion.com/video/xmpg2m_xocai-comp-plan-by-paul-engemann_lifestyle.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

c.    **The Leadership Pool Bonus**

75.    The Leadership Pool Bonus is (theoretically) available to Participants achieving the rank of Gold Executive or higher.  However, only 2% or less of all Participants ever achieve this rank.

76.    The Leadership Pool Bonus is made up of 4% of MXI's bi-weekly wholesale group volume to be divided by MXI's top ranks.  As with the Executive Generation Bonus, the higher a Participant is ranked, the more he or she can draw from this 4% reserve.  Included below is a picture used by MXI to explain the effect of recruiting Participants on sharing in the Leadership Pool Bonus:



77.    Each of the people with a $100 bill over their chests in the above picture is a Participant whose lesser leg has purchased at least $10,000 Bonus Volume.

78.    Neither a Participant's eligibility for the Leadership Bonus nor the amount of the Leadership Bonus is determined based on Retail Sales.

---

[9] Http://www.dailymotion.com/video/xmpg2m_xocai-comp-plan-by-paul-engemann_lifestyle.

**Gordon Silver**
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

### d.      Lifestyle Rewards and Mercedes-Benz Car Allowance

79.      MXI provides various other rewards for Participants based on rank.  For example, upon achieving the rank of Gold Executive, a Participant is flown to Reno, Nevada to tour the MXI facility.  Platinum Executives are eligible to take a cruise to the Caribbean.  Upon reaching the Presidential rank, a Participant is eligible to take the "100K Journey," described as an "once-in-a-lifetime" "highly exclusive" trip to an exotic location with the MXI corporate executive team.[10]  Participants reaching the Ambassador Executive rank receive a six month Mercedes-Benz Car Allowance.  These rewards are illusory, however, and in place primarily to benefit the Promoter Defendants and to lure in more Participants.  Fewer than 2% of all Participants become eligible for these rewards.

80.      None of these awards and incentives have anything to do with Retail Sales.  Moving up in the ranks is dependent upon bringing in new Participants who purchase MXI's overpriced chocolate—or a Participant's purchase of chocolate himself.

### e.      Quick Check Bonus

81.      Other than bonuses tied to rank, MXI provides one-time bonuses for bringing in new Participants who enroll in the "Auto-Ship Program."  Depending on the level of service the new Participant buys, the recruiting Participant gets a $25, $50, or $150 check.   MXI's Compensation Plan describes the Quick Check Bonus as follows:

---

[10] Https://www.youtube.com/watch?v=m-ckiQX2WLE

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

## Quick Check Bonus

*(The Quick Check Bonus is paid weekly.)*

Personally Sponsor an Affiliate (100BV) who enrolls in the Auto-Ship Program (50PV). You must also be "active" to qualify.

Personally Sponsor an Associate (200BV) who enrolls in the Auto-Ship Program (100PV). You must also be "active" to qualify.

Personally Sponsor a Business Builder (600BV) who enrolls in the Auto-Ship Program (100PV). You must also be "active" to qualify.

$25 Quick Check — Affiliate (100BV)

$50 Quick Check — Associate (200BV)

$150 Quick Check — Business Builder (600BV)

[11]

82.    The Quick Check Bonus bears no relation to Retail Sales.

**f.    X Bonus**

83.    MXI's X Bonus also incentivizes recruiting with no relation to Retail Sales. Every time a Participant enrolls a third member of his or her "team," the Participant receives a $75 check.  As illustrated in MXI's Compensation Plan:



## X Bonus

Every 3rd member of your team that you personally sponsor you receive a $75 X Bonus. The X Bonus may be earned throughout the lifetime of an MXI Affiliate or higher. The qualification period for the X Bonus is 21 days. Bonus is paid weekly.

1 + 2 + 3 = X Bonus $75

Sponsor must be "active" & Enrollee must enroll in Auto-Ship Program
(Affiliate 50PV, Associate/Business Builder 100PV, and Executive 200PV)

[12]

---

[11] Compensation Plan at 8.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

84. This bonus is based solely on recruitment. Retail sales are not relevant. In fact, the amount of wholesale product purchased is not even relevant for this particular bonus.

### 3. Compensation for Retail Sales is Insignificant

85. As explained above, the focus of MXI's Compensation Plan is on recruiting, purchases by junior Participants, and Inventory Loading. While a Participant can theoretically sell product to retail customers for a profit, few Retail Sales actually happen. Moreover, the rewards for Retail Sales pale in comparison to the recruiting rewards. Both of the ways a Participant is supposedly able to make money selling chocolate to non-Participants are illusory and actually function as incentives for Participants to turn retail customers into Participants.

### a. Retail Sales for More Than the Wholesale Price Are Rarely Achieved

86. At least in theory, the first way a Participant can earn money through Retail Sales is by purchasing MXI chocolate at wholesale prices, selling that product at retail to customers, and pocketing the difference between the wholesale and retail prices of the product. However, sales at prices above wholesale are rarely achieved, likely because MXI's chocolate is far more expensive than other widely available chocolate and because MXI's claims to justify the extra expense—that Xocai chocolate is "healthy"—are (at best) counterintuitive.

87. MXI products are readily available on Amazon.com and Ebay for prices at or below the wholesale amounts Participants pay, and far less than MXI's recommended retail price. The chart below lists a few examples:

| MXI Product | Wholesale Price | Recommended Retail Price | Price Sold on Ebay |
|---|---|---|---|
| High-Antioxidant Protein Shake (14 days) | $74.00 | $93.95 | $42.99 |
| Healthy Peanut Butter Cup | $128.00 | $167.95 | $99.99 |

———————————— (continued)

[12] *Id.* at 9.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

| | | | |
|---|---|---|---|
| XoLove Bites (28 servings) | $133.00 | $115.00 | $65.00 |
| Xophoria Cleanser-Serum | $118.00 | $162.95 | $69.99 |
| Anti-Aging Capsules | $128.00 | $177.95 | $49.99 |
| Xocai Nuggets (28 Day Supply) | $133.00 | $172.95 | $129.99 |
| Omega Squares (28 Day Supply) | $128.00 | $115.00 | $75.00 |
| X-Power Squares (28 Day Supply) | $128.00 | $167.95 | $77.90 |
| Variety Pack (28 Day Supply) | $135.50 | $175.45 | $99.99 |

88.     The easy availability of MXI product at fire sale prices provides evidence that profitable Retail Sales are difficult to achieve.  Participants are so desperate to unload MXI product and recoup at last some of their losses that they turn to these means.

89.     In addition, Plaintiffs know from personal experience that Xocai chocolate cannot be sold at retail for significantly more than the wholesale price that Participants pay MXI (and the chocolate is difficult to sell at even wholesale prices).  Despite their best efforts, they were unable to sell more than a small fraction of the chocolate they purchased from MXI for any price, let alone for more than the wholesale price.  In addition, Plaintiffs know from other Participants that they, too, were unable to make any significant Retail Sales at amounts greater than wholesale prices.

**b.     The Preferred Customer Program**

90.     The second way a Participant can theoretically make money from sales to non-Participants is through MXI's "**Preferred Customer Program**."  Participants can sign up "**Preferred Customers**" who will be entitled to purchase product directly from MXI at a discount.  The Preferred Customers do not purchase product from the Participants themselves,

**Gordon Silver**
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

though, so MXI's sales to Preferred Customers are not the same thing as Retail Sales by Participants.

91.     A Participant does get two benefits from enrolling Preferred Customers. First, after enrolling three Preferred Customers, the Participant will receive his next auto-ship product for free. Second, MXI will credit half of the assigned Bonus Volume (a value assigned to the amount of product purchased that is related to, but not the same as, the price paid for the product) purchased by the Preferred Customers to the amount of the Participant's Infinity Bonus. However, MXI does not take *any* of the product purchased by Preferred Customers into consideration when it determines a Participant's rank in the hierarchy (*i.e.,* "Royal," "Royal 500," etc.).  In contrast, when a Participant enrolls three entry-level Participants, he receives at least $150 in Quick Check and X Bonuses and *all* of the volume purchased by entry-level Participants is credited to a Participant's Infinity Bonus *and* to determining the Participant's rank. Thus, while a Participant gets some benefit from enrolling Preferred Customers, a Participant gets a much greater benefit by enrolling new Participants. At every turn, MXI gears its incentives and rewards to push Participants to recruit new Participants.

92.     The fact that MXI excludes sales to Preferred Customers from determining ranks within its pyramid further demonstrates that actual retail sales of chocolate are not as valuable or important to MXI as recruiting new Participants.  In a legitimate business, where the aim is to increase retail demand for its product, repeat buyers like Preferred Customers would be highly valued, since they, unlike Participants, do not have to be paid compensation by MXI.  But MXI's business model is based on sales *to* Participants, who recruit more chocolate-buying Participants, so MXI incentivizes its Participants to bring in new Participants, not Preferred Customers or retail customers.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

93. Just as Participants have little incentive to enroll Preferred Customers, persons interested in MXI products have far more incentive to enroll as Participants than as Preferred Customers. A Preferred Customer receives the following benefits: (i) a 20% discount on all products and (ii) a free product with every three auto-ship orders. But if that same potential customer also becomes an entry-level Participant, he will get (i) a bigger discount by buying product at wholesale prices and (ii) access to MXI's supposedly lucrative Compensation Plan. The only difference in cost between signing up as an entry-level Participant and a Preferred Customer is that a new Participant has to pay a $25 fee.

### 4. MXI's Preferred Customer Program Encouraged Inventory Loading

94. One of the principal dangers of pyramid schemes is that they encourage the practice of Inventory Loading. While the Preferred Customer program provides for the possibility of sales to non-Participants, it does nothing to prevent inventory loading. First, Preferred Customers receive their product from MXI, not from the Participant, so signing up a Preferred Customer does nothing to reduce a Participant's inventory. Second, MXI does not consider Preferred Customer purchases in assessing a Participant's ranking, so Participants face the same pressures to inventory load, regardless of whether they sign up Preferred Customers.

95. The only real significance Retail Sales and Preferred Customer signings have in the MXI model is to induce people who may be interested in buying and using the product to become Participants. It is common practice for Participants to offer interested individuals an inspirational speech about the health value of antioxidants supposedly found in Xocai chocolate. This initial pitch will quickly turn into the "real" pitch where Participants try to persuade potential customers that they can buy Xocai chocolate at a discount and that they can also make large amounts of money and drive free luxury vehicles by selling MXI product. Defendant Butch Swaby has multiple videos on the internet giving specific techniques on how to convert

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

potential customers to Participants.[13]  Defendant Sherm Smith has published various forms of advice on the internet to help Participants recruit more Participants.  He suggests trying to find someone's hot button—do they need more money, do they have health issues, or do they just like chocolate—in a conversation to enroll them as a Participant.[14]

96.     MXI's senior management did not treat the Preferred Customer program as a serious business initiative. For example, scheme promoters consistently pushed Michelle and Enrique Martinez to recruit new Participants, not Preferred Customers.

97.     During one conference call regarding Participants' efforts to sign up Preferred Customers, Defendant Paula Pritchard admitted that she and others had "enrolled" their *pets* as Preferred Customers to appease Manager Defendant Jeanette Brooks. In an apparent effort to create a paper trail suggesting that MXI had at least some retail customers, Manager Defendant Jeanette Brooks spent a period of time in 2013 encouraging Participants to sign up Preferred Customers.  Given the difficulty of the task, some Participants simply made up names and enrolled non-existent persons as Preferred Customers, and then purchased MXI product themselves, to meet MXI's demands.  Thus, rather than increasing sales to non-Participants, the Preferred Customer program had the opposite effect: Participants purchased even more unsaleable product.

98.     Nonetheless, MXI's emphasis on enrolling Preferred Customers was short-lived. After a few months of paying lip service to the Preferred Customer program, MXI's management stopped encouraging Preferred Customer enrollment.

---

[13] *See*, *e.g.*, https://www.youtube.com/watch?v=dauN8lbB8Uw.

[14] Https://www.youtube.com/watch?v=0mDP65QjW_E.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

**C.    MXI's Attempts to Avoid the Pyramid Scheme Label Fail**

99.    As demonstrated above, MXI satisfies the definition of a pyramid scheme: its Participants must pay for the right to sell its products, and it pays its Participants overwhelmingly more for recruiting new Participants than for Retail Sales.

100.    In a transparent effort to disguise the fact that MXI is a pyramid scheme, MXI adopted two policies, neither of which changes the conclusion that MXI is, in fact, a pyramid scheme.

**1.    MXI's Retail Sales Certification Is a Sham**

101.    MXI has taken to burying boilerplate language at the end of some of its recent MXI Associate Applications that consists of statements relating to Retail Sales that MXI knows are false. Specifically, these pre-printed forms state:

> I certify that 1) the amount of the order on the reverse side represents by my reasonably expected requirements for the [*sic.*] retail sales and personal consumption, 2) I am not stocking unsold XO Lifestyle Worldwide products for the purpose of qualifying for bonuses, and 3) at least 70% of my previous purchases resulted in retail sales.

102.    As MXI and the Individual Defendants know from their knowledge of MXI's business and their interaction with Participants, this "**Retail Sales Certification**" is not a correct statement of fact. Rather, MXI included this Retail Sales Certification in some of its documentation in a blatant attempt to create a paper trail for use in defending against a charge that MXI is a pyramid scheme.  To avoid the pyramid scheme label, courts require participants' compensation to be tied to Retail Sales, and as discussed above, MXI Participants' compensation is tied overwhelmingly to recruitment and to Participant purchases.   The Retail Sales Certification is MXI's attempt to paper over this problem.

103.    Item 3 in the Retail Sales Certification demonstrates that MXI's true focus was in building a phony legal defense, and not in having Participants provide a genuine certification. The Federal Trade Commission (the "**FTC**"), in a well-known decision referred to as the *Amway*

**Gordon Silver**
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

decision, determined that a MLM must actually sell 70% of its product to retail customers, as opposed to participants in the enterprise, to avoid being an unlawful pyramid scheme. MXI plainly had the *Amway* decision on its mind when it decided to insert the false Retail Sales Certification into its boilerplate contracts.

104.    The Retail Sales Certification is a sham.  Participants purchase product for the purpose of rank advancement.  Participants stockpile MXI product because they cannot profitably sell the product they purchase.  Participants sell far less than 70% of their product to non-Participants (at least for more than the wholesale price).

105.    In addition, Defendants do nothing to enforce the Retail Sales Certification.  MXI does not track retail sales or verify information from Participants regarding supposed retail customers.

106.    Moreover, Defendants know the Retail Sales Certification is a sham.  As described above, MXI provides strong incentives for Participants to purchase MXI product, and it knows its product cannot be profitably sold at retail because its wholesale prices are far too high.  Defendants have offered outlets in third-world countries where Participants can sell the product at a deep discount from wholesale prices so that Participants can offload their stockpiled inventory and at least get something back for all the money they invested.

107.    The Individual Defendants even have strategies for offloading their own stockpiled products to the Participants in their downlines.  For example, Promotor Defendant Dean would offer weekly specials to the Participants in her downline.  The specials would include ways Participants in her downline could get free product from her if they purchased product from MXI (thereby increasing her volume requirements for Dean's own rank advancement and bonus calculations).  After the Participants purchased the product from MXI, Dean would give the Participants some of her previously purchased products.  Thus, Dean duped

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775) 343-7500

29 of 54

Participants into buying more product from MXI in exchange for extra "free" product from Dean.

108.    In sum, the Retail Sales Certification was and is ineffective at tying Retail Sales to Participant sales and thus ineffective at tying Retail Sales to Participant compensation.

### 2.    MXI's Return Policy Does Not Deter Inventory Loading

109.    MXI's Rules and Regulations describes the following "**Return Policy**":

> Due to the nature of our product, the MXI Corp return/exchange policy is for a 60 day period after the date of purchase [except in cases of defective or damaged product, in which case the period is 10 days].  In order to return product for an exchange or refund, Associates must first request a Return Merchandise Authorization (RMA) from MXI Corp Customers Care Department.  Returned product must be factory sealed, shrink-wrapped and received in resalable condition.  If opened, half-eaten, repackaged, melted, "activated," etc., do not send it back as you will not receive a refund.  You will receive a credit, replacement or refund for resalable product only.  Products returned outside of the 60 day period will not be replaced, exchanged or refunded.

110.    MXI's Return Policy requires that returns be made within 60 days of receipt of the product.  Thus it does not reduce or eliminate the possibility of Inventory Loading and the problem of Participants finding themselves saddled with thousands of dollars of unsaleable product, particularly for Participants involved in the scheme for more than two months.

111.    MXI's Return Policy also does not protect against Inventory Loading because it does not guarantee cash refunds.  MXI only promises "a credit, replacement or refund."  The Return Policy leaves open the possibility that Participants receive only a credit to purchase more unsaleable product.  Finally, the Return Policy does not specify on what basis return requests will be granted or denied.

### VI.    THE INDIVIDUAL DEFENDANTS MANAGE, PROMOTE, AND PARTICIPATE IN MXI'S PYRAMID SCHEME

112.    Manager Defendants Martin Brooks, Jeanette Brooks, Andrew Brooks, and Dr. Gordon Pedersen all manage or managed MXI.  The three Brooks Manager Defendants are the co-founders of MXI and are current or former officers of MXI.  Each has reviewed, approved,

**Gordon Silver**
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

30 of 54

and is responsible for MXI's Policies and Procedures, Rules and Regulations, and Compensation Plan. In fact, they were part of the team that originally designed MXI's pyramid scheme, and they direct MXI's operations. They have each profited from the operation of MXI's pyramid scheme. The Manager Defendants make money managing MXI's scheme. They directly siphon money from Participants' purchases of chocolate at wholesale.

113.    Promotor Defendant Jeanette Brooks is essential to the MXI scheme. According to MXI's own website, Jeanette "has played an invaluable role in the development" of MXI's "image, as well as the training and motivation of" Participants and MXI's worldwide leadership.[15] Jeanette appears frequently at MXI conferences to provide an example of wealth obtained through MXI and to mentor Participants on how to increase their volume through recruiting. She often explains her meager beginnings, which she transformed to vast wealth through MLMs, the most recent of which is MXI. Manager Defendant Jeanette Brooks understands that MXI (and accordingly herself) stands to gain the most money from recruiting-focused Participants. Thus, she consistently encourages Participants to recruit. At one conference, she encouraged Participants to hold home parties to entice other people to be on the hosting Participants' teams. According to Manager Defendant Jeanette Brooks: "[t]his is the real way to build volume. This is the way!"[16] As a result, she shouted at a crowd of cheering Participants: "I need partiers! I need party-doers, party-goers! I need parties!"[17]

114.    Manager Defendant Andrew Brooks is just an important to MXI's scam as Manager Defendant Jeanette Brooks. Manager Defendant Andrew Brooks maintains a large internet presence to promote MXI. He routinely hosts MXI's "Executive Team Elite" weekly training conference calls that are published on Youtube to encourage Participants to focus on

---

[15] Http://www.mxicorp.com/founders/.

[16] Https://www.youtube.com/watch?v=TcVLQbyTcVw&list=UUlcamfREA3EwyTtwM4gsZoQ&index=81.

[17] Id.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

recruiting by offering strategies for Participants to obtain more Participants.[18]  He also publishes on Youtube "Cash Calls" where he calls a Participant to tell them how much money they are going to get for recruiting.[19]  Manager Defendant Andrew Brooks also has several videos published on Youtube explaining various aspects of MXI's pyramid scheme, such as how preferred customer purchases do not count toward a Participant's rank advancement in the Infinity Tree.[20]

115.  Manager Defendant Gordon Pedersen, as Chief Education Officer, has profited from MXI's pyramid-scheme structure.  Manager Defendant Gordon Pedersen has numerous internet videos promoting XMI's pyramid scheme by hyping the alleged health benefits of Xocai chocolate.[21]  He also participates in videos published on Youtube with Promotor Defendants to encourage Participants to enroll and recruit.  For example, Manager Defendant Gordon Pedersen appeared with Promotor Defendant Jeremy Reynolds to entice Participants to purchase MXI's "Wealth Pack" for approximately $500.[22]  Promotor Defendant Jeremy Reynolds points out that "with all these healthy chocolate products, this truly is going to improve your health and your wealth."  Manager Defendant Gordon Petersen responded by later pointing to the products contained in the Wealth Pack exclaiming: "This is wealth!"[23]

116.  The three Brooks Manager Defendants did not start MXI alone.  They needed a recruiting force in on the scheme to convince Participants to join MXI.  Promotor Defendants Connie Hollstein, Sherman Smith, William "Butch" Swaby, Felix Gudino, Glen Overton, Adam Paul Green, Jeremy Reynolds, Derrick Winkel, and Paul Engemann (along with their respective

---

[18] https://www.youtube.com/watch?v=b1cAmH8XuAQ.

[19] *See, e.g.*, https://www.youtube.com/watch?v=EB7MQWTxRQU.

[20] *See, e.g.*, https://www.youtube.com/watch?v=wd0wAkZjfLg.

[21] *See, e.g.*, https://www.youtube.com/watch?v=t87721Z2p8Q.

[22] *See, e.g.*, https://www.youtube.com/watch?v=UPsRmbv2uMI.

[23] *Id.*

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

spouses) all promote MXI's pyramid scheme and profit from it.  Each of these Defendants is rated as a millionaire or multi-millionaire member of MXI.  Most—if not all—were original promoters and each reviewed, approved, and are responsible for MXI's Policies and Procedures, Rules and Regulations, and Compensation Plan.  They each have profited and continue to profit from MXI's pyramid scheme and from the investments of the Participants who lose money in the scheme.  They have grown wealthy from the losses of Plaintiffs and other Participants.

117.    Promotor Defendants Paula Pritchard, Kathleen Robbins, Ian Murray, Judy Murray, Sandy Chambers, and Kerry Dean (collectively the "**GPG Promotor Defendants**") also promoted and profited from MXI's pyramid scheme.  These Promotor Defendants belong to a group of professional MLM promotors, Global Partners Group.  MXI, the Manager Defendants, and the other Promotor Defendants brought in the GPG Promotor Defendants as a group to boost recruiting and Participant numbers.  In exchange for coming to MXI, MXI paid them bonuses not contained in MXI's Compensation Plan.  While at MXI, these GPG Promotor Defendants reviewed, approved, and were responsible for MXI's Policies and Procedures, Rules and Regulations, and Compensation Plan.  They have since left as a group to promote another MLM, Jeuneusse Global.  Although no longer with MXI, these GPG Promotor Defendants grew wealthy from the losses of Plaintiffs and other Participants.

118.    The Promotor Defendants have done their job well.  In coordination with the Manager Defendants, they have flooded the internet with promotional materials meant to lure new Participants into MXI and explain how to recruit.

119.    All of the Promoter Participants achieved ranks from Double Diamond Executive to Ambassador.  The Promotor Defendants were all involved in MXI at or near its beginning.  Upon information and belief, they all make or made money from the scheme in addition to what is offered in the Compensation Plan.  Moreover, since they started and planned MXI, they

**Gordon Silver**
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

33 of 54

constitute the top 5% of recruiters who make the most lucrative bonuses.  The vast majority of Participants will never have access to the compensation structure available to the Promotor Defendants.

120.    Plaintiffs participated in multiple telephone conferences in which all of the Individual Defendants actively promoted the MXI pyramid scheme by, among other things, encouraging Plaintiffs and others to recruit new Participants.  Plaintiffs personally received multiple emails and other correspondence from Defendants Jeannette Brooks, Paula Pritchard, Kerry Dean, Andrew Brooks, Sandy Chambers, Ian Murray, Judy Murray, Kathy Robbins, and Paula Pritchard promoting the MXI pyramid scheme by, among other things, encouraging Plaintiffs and others to recruit new Participants.

## VII.    DEFENDANTS LURE PARTICIPANTS INTO THE SCHEME WITH MISREPRESENTATIONS

121.    By itself, the fact that Defendants operated a pyramid scheme gives rise to liability.  But on top of operating a pyramid scheme, to lure new Participants into the scheme, Defendants misrepresented, and continue to misrepresent, the financial rewards that Participants will enjoy and the nature of MXI's marketing scheme.

122.    MXI and the Individual Defendants claim that paying MXI's fees and buying its chocolate will allow Participants access to a lawful program that "virtually guarantees" financial success.  MXI tells its Participants that they can earn hundreds of thousands of dollars annually in the MXI system:[24]

---

[24] Https://www.youtube.com/watch?v=qTXYW346Cns.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

123.     To sell the financial-success promise, Defendants tout the wealth of the Manager Defendants and those few insiders at the top of the pyramid, the Promotor Defendants, as examples of the riches that await new Participants.

124.     This false image of lawful achievable financial success is the bedrock of MXI's business and the reason why people become Participants.   The Individual Defendants consistently tout the financial advantages of MXI's scheme.   The collective message is clear— "If we can do it, so can you.   Get committed.   Get Going!"[26]

125.     Defendants' efforts to promote the image of success through MXI are orchestrated and intended to deceive.   Defendants maintain a large internet presence to spread

---

[25] Http://160328.myxostory.com/img/xostory/XOPresentationBooklet.pdf.

[26] Http://adampaulgreen.com/about/.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

MXI's ability to make Participants rich.[27]   Individual Defendants advertise that becoming an MXI Participant is a "Solid, Low-Risk, Huge-Potential Opportunity!" with the "perfect potential for huge success!"[28]   Defendants claim that MXI is "unlike any other company" and that working as a Participant presents "[l]ittle risk of failure" and a "[h]uge potential for success with a groundfloor opportunity."   MXI has also explained itself to be an "[e]stablished framework with groundfloor opportunity—without the risk."   As stated in one promotional video available on the internet, Participants can "pick the kind of income they want to earn" with "quite a few people making" $25,000 a month in MXI's chocolate business.[29]   And "most of" those that pay around $349 to start MXI networking "earn anywhere from $200-$2,000 a month" while those that pay around $849 to start networking typically "will earn $2,000-$10,000 a month."[30] Joining the MXI team gives Participants an ability to "have a legacy for your family in the next 30-60 days."[31]

126.    MXI's website proudly lists the Promoter Defendants who are supposed "MXI Millionaire Members" and "MXI Multi-Millionaire Members."   MXI claims these persons achieved their financial success working in the MXI system, and they include statements from these supposed chocolate millionaires regarding the financial success the MXI system brought them:

- Connie Hollstein made "the best business decision of her life" in joining MXI. She makes a "lucrative income (which will continue whether she chooses to stop working or not)."  Her success has allowed her daughter "to graduate from college debt free," and "[h]er retirement worries are over."   "And, it all began with Chocolate!"

---

[27] In fact, every Participant is encouraged to have their own website to tout their healthy chocolate business.

[28] Http://160328.myxostory.com/img/xostory/XOPresentationBooklet.pdf.

[29] https://www.youtube.com/watch?v=pSvmtl1RkoQ.

[30] *Id.*

[31] *Id.*

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

- Sherm and Ruth Smith exclaim:  "Wow! What an honor it is to have made this amount of money while doing something we enjoy so much."

- Paul Engemann says:  "We have a product and an opportunity that changes lives for the better  . . . [I]t has become my passion to share what I know with others. From that passion and sharing came this financial achievement. Sharing your passion and being of service to others is the key!

127.    Indeed, all of the Promoter Defendants have produced videos and made statements via the internet knowingly promoting MXI's pyramid scheme and touting the financial rewards supposedly available to Participants.  Here are some examples:

| Promotor Defendant | Excerpts from the Internet |
|---|---|
| Connie Holstein | "I was a high school teacher so, as you can imagine I had no money, but a lot of time."[32]<br><br>"I found this wonderful business marketing healthy chocolate internationally. . . . It has just been a wonderful business.  It's been exciting—meeting new friends, traveling the world and achieving our financial dreams."[33] |
| Sherman Smith | "Its [MXI] just been tremendous because it's something you can do from any place.  We love to travel."[34] |
| William "Butch" Swaby | "We lost everything and got to start over at almost age 60 . . . but then this business come along and that's changed everything."[35]<br><br>"After a few months, we started looking at the checks and realized hey this could be a huge business."[36]<br><br>"It's really changed our life totally—by working this business."[37] |
| Felix Gudino | "I was dead broke."[38] |

---

[32] Https://www.youtube.com/watch?v=avLwgMcrn8E.

[33] *Id.*

[34] Https://www.youtube.com/watch?v=d5GWcfabsuo.

[35] Https://www.youtube.com/watch?v=eJJeo15tRnE.

[36] *Id.*

[37] Https://www.youtube.com/watch?v=eJJeo15tRnE.

[38] Https://www.youtube.com/watch?v=OJR_y9IkeAI.

Gordon Silver<br>Attorneys At Law<br>Suite 940<br>100 West Liberty Street<br>Reno, Nevada 89501<br>(775)343-7500

| | |
|---|---|
| | "This business has put me in the position where I can actually help others to get healthy and also wealthy."[39] |
| | "Through [this] business you make money, have fun, and it's great."[40] |
| | "I went from zero to hero."[41] |
| | "There's no limits to what you can make here."[42] |
| Glen Overton | "We opened a Ruth's Chris five years ago by the franchise.  It cost us well over a million dollars to put that up on its feet.  I make more money on Xocai than we did with that million dollar investment."[43] |
| | "You have to know four or five good people who know four or five good people who know four or five good people.  And all of a sudden your downline starts to spring like flowers in the springtime.  And all of a sudden it becomes wonderful."[44] |
| Adam Paul Green | Promotor Defendant Adam Paul Green advertises on his website: |
| | In April of 2005, Adam and his wife Melannie met the Brooks family, discovered a chocolate that was healthy, caught the business vision and joined the company as one of the founders of the revolution! In the space of just a few years, they have seen the growth of this fantastic company from its "grass roots" infancy to the multi-million-dollar powerhouse it is today. The Green's can only describe it as, "Unbelievable." |
| | – Adam's lifetime sales with the 'Healthy Chocolate Company' are over **$110,000,000**. |
| | – Lifetime Income with the 'Healthy Chocolate Company' is over **$4,600,000**. |
| | – Team Built:  **127,000+** in **42 Countries**. |

[39] *Id.*

[40] *Id.*

[41] Https://www.youtube.com/watch?v=JkeoUgG_9Zg.

[42] *Id.*

[43] Https://www.youtube.com/watch?v=feogRWJMxyg.

[44] *Id.*

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

| | |
|---|---|
| | Although neither Adam nor Melannie had been a distributor for another Network Marketing Company that did not stop them from believing that they would succeed; they took immediate action! (www.MyChocolatePod.com) They are one of the original 11 distributors to hear the very first Xocai presentation and are ruthlessly committed to making sure everyone has a positive experience with Xocai.<br><br>Melannie wants everyone to know, "*If we can do it, so can you. Get committed. Get going*!"<br><br>Adam is a leader. Adam and Melannie were the **2nd distributorship** to reach the level of "Xocai Ambassador" and are the 2nd highest money earners in company history.<br><br>Just this year, Adam and Melannie became Xocai's **2nd highest monthly income earners** and they are proud of their team for helping them reach this massive achievement.[45] |
| Jeremy Reynolds | "I'm living proof [that all Participants can be millionaires]. There are more than 20 other people who are living proof. It can be done—by anyone. All you need to do is the same things that we did to get there. It's a simple formula: Correct Principles + Consistent Application + Time = Xocai Millionaire Member."[46]<br><br>"Anyone can do this business!"[47]<br><br>"I call this the get rich steady over time."[48]<br><br>"You'll get to whatever goals you want."[49] |
| Derrick Winkel | "In three to four to five years you can quantum leap where people with the best ivy league schools in the nation would make [financially]."[50] |

---

[45] Http://adampaulgreen.com/about/.

[46] Http://teamhealthychocolate.com/thc/the-millionaire-manual/.

[47] Https://www.youtube.com/watch?v=liXbNscpl9Q.

[48] *Id.*

[49] *Id.*

[50] Https://www.youtube.com/watch?v=fDjrtJnUJwU.

**Gordon Silver**
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

| Paul Engemann | "You work for a while you work hard for a while and then you create passive income that's just absolutely killer.  And I've done that and every two weeks I go out to my mailbox and I do the happy dance."[51] |
|---|---|
| | "If I can do this, you can do this."[52] |
| | Participants can "pick the kind of income they want to earn" with "quite a few people making" $25,000 a month in MXI's chocolate business.[53] |
| | And "most of" those that pay around $349 to start MXI networking "earn anywhere from $200-$2,000 a month" while those that pay around $849 to start networking typically "will earn $2,000-$10,000 a month."[54] |
| | Joining the MXI team gives Participants an ability to "have a legacy for your family in the next 30-60 days."[55] |
| Paula Pritchard and Kathleen Robbins | Promotor Defendants Paula Pritchard and Kathleen Robbins advertised when they were with MXI that: |
| | Paula Pritchard is the grand lady of Network Marketing working together in a partnership with Kathy Robbins. |
| | As partners, they have risen to the highest possible position and income levels with a number of network marketing companies and led the expansion of three of those companies into the European market, producing hundreds of millions of dollars in profit. |
| | Through hard work and the development of a simple system that worked time and time again, they brought life changing success to tens of thousands of their business partners. Together they have built large organizations of 200,000 distributors, throughout 15 countries. |

---

[51] Https://www.youtube.com/watch?v=XqvqYjsQa58.

[52] *Id.*

[53] https://www.youtube.com/watch?v=pSvmtl1RkoQ.

[54] *Id.*

[55] *Id.*

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

| | |
|---|---|
| | . . . |
| | She is nowadays an Ambassador in Xocai with an estimated annual earnings in 2009 of $1,061,000+. |
| | Total estimated revenue earned in partnership with Kathy Robbins in Network Marketing approx. $12 million+.[56] |
| Sandy Chambers | "My first year and a half I become the very first international ambassador."[57] |
| | "I also in my first two years made my first million dollars."[58] |
| | "This business has afforded me a lifestyle that people only dream of."[59] |
| | "I have been able to travel the world."[60] |
| | "This company has sent me to Italy on a first class cruise, Russia on a first-class cruise.  These are things that most people never ever even put on their wish list cause they think it's unreachable.  But in our company, anything is attainable."[61] |

128.    These misrepresentations are all made as part of a coordinated strategy so that all Participants were presented with the same or similar misleading statements regarding the financial prosperity attainable through MXI.

129.    But any claim or suggestion that MXI offers Participants a route to financial success—much less the level attained by the Individual Defendants—is false.  Few, if any, Participants make a profit.  MXI made publicly available a "2010 Income Disclosure Statement."  This Income Disclosure Statement states that 95% of MXI "Active Associates" have average yearly earnings of $3,050 or less.  Indeed, 68% have average yearly earnings of $471.  But these

---

[56] Http://www.businessforhome.org/2010/09/paula-pritchard-xocai-review/.

[57] Https://www.youtube.com/watch?v=Xm9VDRw6rVs.

[58] Id.

[59] Id.

[60] Id.

[61] Id.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

amounts are *less* than Participants pay MXI to participate in the system, and these figures do not count inactive Participants, who already gave up their futile attempts to make money.

130.     The data in the 2010 Income Disclosure Statement is consistent with Plaintiffs' experience.  They paid MXI in fees and chocolate purchases, and they personally lost thousands of dollars.  They know many other Participants, and all of those Participants also lost money.

131.     In addition to making false claims regarding the financial prosperity Participants may attain, Defendants make false claims regarding the lawful nature of MXI's scheme.  As discussed above, MXI is an illegal pyramid scheme.  Individual Defendant Adam Paul Green has attempted to refute claims that MXI is a scam and a pyramid scheme.[62]  MXI has also taken to the internet to assure Participants that MXI is not a pyramid scheme.[63]  MXI falsely represents in its Rules and Regulations (provided to all Participants and available on the internet) that the "MXI Corp program is based on retail sales."[64]  Defendants routinely pump up MXI's health as a company to ensure Promotors that they are investing in an honest and legal company.  MXI has just recently rebranded itself as XO Lifestyles Worldwide in an effort to expand to more international markets and is planning a celebration of its newest product launch at Bally's in Las Vegas, Nevada.

## VIII.  PLAINTIFFS ARE VICTIMS OF MXI'S PYRAMID SCHEME

132.     In October 2008, Plaintiff Enrique Martinez was recruited to become a participant in MXI.

133.     Enrique Martinez agreed to become a Participant without completing or signing any document.  Plaintiff Michelle Martinez and Enrique Martinez were a husband-and-wife

---

[62] *See*, *e.g.*, http://adampaulgreen.com/mxi-corp-scam/.

[63] Https://steptap.com/How-To-Tell-The-Difference-Between-Pyramid-Scheme-And-Legitimate-XO-Business.

[64] MXI Rules and Regulations.

**Gordon Silver**
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

Participant team.   Michelle Martinez also did not complete or sign any documents prior to becoming a Participant.

134.   The Martinezes together invested over $200,000 in the MXI pyramid scheme. These investments included cash fees and product purchases.

135.   Sunshine Martinez-Valdez invested approximately $2,000 in the MXI pyramid scheme in cash fees and product purchases.

136.   Like the vast majority of Participants, Plaintiffs lost most of their investments in the MXI pyramid scheme.

## IX.   ALLEGATIONS REGARDING RICO COMMON ELEMENTS

### A.   Persons Employed by or Associated with Any Enterprise

137.   Each Defendant is a "person" for purposes of RICO, 18 U.S.C. § 1962, because each defendant is, and was at all relevant times, an individual or entity capable of holding legal or beneficial interest in property.

138.   All of the Defendants in this action collectively form an "enterprise" under 18 U.S.C. § 1962, in that they are a group of individuals and entities associated in fact, although not a legal entity.   The association-in-fact has a longevity sufficient to permit those Defendants to pursue the enterprise's purpose—the unlawful pyramid scheme.

139.   In the alternative, the enterprise consisted of MXI, which is controlled by the Manager Defendants.

140.   In the alternative, MXI's unlawful operation as a pyramid scheme is an enterprise, in that it is an association in fact of all Defendants and others, which, although not gathered under any legal entity, operates the illegal pyramid scheme to draw new Participants to MXI.

141.   There is an identifiable hierarchy and framework within the enterprise.   It is directed by the Manager Defendants, to whom the Promoter Defendants report or reported.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

**B.      Defendants Engaged in a "Pattern of Racketeering Activity" by Participating in a "Scheme and Artifice" to Defraud**

      **1.      Defendants' Operation of and Promotion of MXI's Pyramid Scheme is Fraudulent**

142.    The Defendants have used false and fraudulent pretenses to deceive the Plaintiffs and the Class and to thereby obtain money and property from the same.  Each of the Defendants acted with specific intent to defraud or with such recklessness with respect to the false or misleading information mailed or wired in furtherance of the pyramid scheme as to constitute requisite *scienter* to commit mail and wire fraud.

143.    <u>First</u>, each Defendant has promoted and/or operated the pyramid scheme, which, by its very nature, is a *per se* scheme and artifice to defraud under the mail and wire fraud statutes.  All Defendants have promoted and/or operated the pyramid scheme.

144.    <u>Second</u>, the Defendants have defrauded Participants by promoting the pyramid scheme through numerous false representations, all to obtain profit.   The Defendants false representations include:

- Statements that MXI's marketing scheme is legal;

- Statements that Participants will profit from the money they invest in MXI by merely working hard;

- Statements that being an MXI Participant is (i) a "Solid, Low-Risk, Huge-Potential Opportunity!"; and (ii) presents "Little risk of failure" and a "Huge potential for success with a groundfloor opportunity";

- Statements that Participants can "pick the kind of income they want to earn"; and

- Statements that MXI's business is driven by retail sales, not recruiting new Participants.

145.    The false statements Defendants have made in furtherance of the pyramid scheme are more specifically described in paragraphs 121-131, *supra*.  Defendants' false statements advocating the MXI scheme as an opportunity for Participants to succeed financially could only

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

44 of 54

have been reasonably interpreted by Participants to mean that Participants can reasonably expect to profit from their participation in the scheme with sufficient effort invested in the scheme.

146.    Plaintiffs and members of the Class relied on these and/or other similar misrepresentations.  Alternatively, Defendants' false statements perpetuated the pyramid scheme, and Plaintiffs and members of the Class were harmed by the pyramid scheme, regardless of any direct reliance on the false statements by particular Plaintiffs or Class members.

147.    Third, Defendants defrauded Participants by promoting MXI's pyramid scheme by omitting material facts for the purpose of and with the intention of defrauding and obtaining money from the victims.  For example, Defendants:

- represented that MXI was a legitimate MLM without disclosing that MXI is really an illegal pyramid scheme;

- claimed that Participants could make money in the MXI scheme without disclosing that the vast majority of Participants lose money; and

- failed to disclose that the purported success and wealth achieved by the Promoter Defendants is virtually impossible to achieve and that the top ranks of MXI Participants make up less than two percent of all Participants.

148.    Plaintiffs and members of the Class relied on these and/or other similar material omissions.  Alternatively, these material omissions perpetuated the pyramid scheme, and Plaintiffs and members of the Class were harmed by the pyramid scheme.

149.    These and other misrepresentations and material omissions were reasonably calculated to deceive a person of ordinary prudence and comprehension.

**2.    Mail and Wire Fraud**

150.    The Defendants committed racketeering acts by promoting an illegal pyramid scheme by using and causing others to use the mail or private or commercial carriers, such as UPS, and by transmitting and causing others to transmit, by means of wire in interstate

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

commerce, writing, signs, signals, pictures, and sounds, all in furtherance of and for purposes of executing a scheme or artifice to defraud, namely an illegal pyramid scheme.

151.    MXI distributed many hundreds of thousands of pieces of promotional literature, statements, checks, and other mailings to many people by commercial carriers or USPS since 2005.  Defendants used the internet to disseminate, publish, and spread the pyramid scheme throughout the United, Canada, and other countries for the purpose of executing their scheme or artifice to defraud in violation of RICO.

152.    MXI maintains its own website as well as a "back office" on the internet where the Participant gains access to exclusive MXI information and the ability to purchase MXI products by inputting credit card information. In addition, the Defendants use outlets like YouTube, Facebook, Twitter, and other websites to disseminate information about MXI's pyramid scheme or transmission of signals, pictures, or information.  Each such transmission is a separate act of wire fraud.

**3.    "Pattern of Racketeering Activity"**

153.    The Defendants' numerous acts of mail fraud and wire fraud amount to a pattern of racketeering activity because they are related and continuous.  The pattern consists of more than two acts, which occurred from 2005 until the present and consistently throughout the period. The predicate acts of mail and wire fraud are related because they had the same or similar purpose:  to convince new Participants to pay to join the MXI pyramid scheme by paying money to do so, to convince those Participants to recruit new Participants, and to perpetuate the pyramid scheme.  They predicate acts had the same result:  convincing Participants to join MXI's pyramid scheme by paying money, having those Participants recruit new Participants to do the same, and perpetuating the pyramid scheme.  The predicate acts had the same participants, the Defendants, each of whom promoted MXI's pyramid scheme.  The predicate acts had the same victims:

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

Plaintiffs and Class members who participated in MXI's pyramid scheme.  Finally, the predicate acts had similar methods of commission:   fraudulent representations concerning numerous aspects of MXI's operations made via online presentations, video and telephonic conference calls, in-person gatherings, written materials, and blog posts, and the operation of the pyramid scheme, using the wires and mail.  In sum, the predicate acts of wire and mail fraud committed by the Defendants constitute an intricately related set of predicate acts sufficient to meet the relatedness standard.

154.    The predicate acts are continuous.  They pose a threat of continued illegal conduct because certain Defendants continue to promote and operate MXI as an on-going pyramid scheme, and have expressed their intention to continue to do so.  MXI has recently rebranded itself as XO Lifestyles Worldwide in an effort to expand to more international markets, and is planning a celebration of its newest product launch at Bally's in Las Vegas, Nevada.

155.    The predicate acts have extended over a significant period of time—approximately 10 years.  The Defendants' regular business of attracting new Participants is conducted by ongoing mail and wire fraud that misrepresents that MXI is a legitimate multilevel marketing enterprise and not an illegal pyramid scheme.  Without repeated acts of wire and mail fraud, the Defendants' fraudulent pyramid scheme would not be in existence.

## C.    Injury

156.    As a direct and proximate result of the Defendants' acts of mail and wire fraud, Plaintiffs and the Class were injured in their business or property.  Plaintiffs' and Class members' business or property was injured by the Defendants' pattern of racketeering activity; Plaintiffs and the Class members spent more money than they have obtained in commissions and/or bonuses as a result of their involvement with Defendants.  The precise amount lost by the Class has not yet been determined, but is estimated at over $100 million.  The precise amounts

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

that each and every participant in the pyramid scheme has (i) spent on costs associated with the Participant "business opportunity" and (ii) has received in commissions or bonuses or other payments from MXI as a result has been tracked, maintained, and accounted for by MXI. Thus, the precise loss of every Class member is capable of being easily ascertained in this litigation, and the total business injury capable of being computed for the Class.

**D.      Effect on Interstate Commerce**

157.     Each enterprise alleged above was engaged in, or affecting, interstate commerce by reason of, at least, each of the Defendants' numerous acts or omissions constituting use of the mail or interstate wire communication facilities in furtherance of their scheme to defraud. Additionally, each enterprise affected interstate commerce because the members comprising it engaged in business in several states and countries and made use of the mail and interstate communications facilities in the process of doing so by causing marketing and promotional materials for MXI, as well as images, videos, and information to be communicated through regular mail and via the internet.

## X.      CLASS ACTION ALLEGATIONS

158.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23.

159.     Plaintiffs seek relief on behalf of themselves and the Class, as defined above as: Participants who, like Plaintiffs, paid MXI's fees and purchased MXI's chocolate between May 1, 2011, and the present and who lost money from their participation in the MXI scheme. The Defendants and their spouses are excluded from the Cass.

160.     The members of the Class number in the hundreds of thousands, making joinder of all Class members in a single action impracticable.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

161.    There are common questions of law and fact common to the Class, including, but not limited to, the following:

- Whether the Defendants operate and/or operated an illegal pyramid scheme;

- Whether Class members paid money to the Defendants in exchange for (1) the right to sell a product and (2) the right to receive, in return for recruiting others into the program, rewards which were unrelated to the sale of the product to retail customers;

- Whether Defendants made misrepresentations regarding the ability of Participants to profit from the MXI pyramid scheme and the nature of the scheme;

- Whether Defendants made materially false representations that MXI was legal;

- Whether Defendants engaged in acts of mail fraud and wire fraud in violation of RICO;

- Whether and to what extent Defendants' conduct has injured the Class members;

- Whether Defendants' conduct constitutes a pyramid promotional scheme under NRS § 598.100(3);

- Whether Defendants at present or in the past contrived, set up, proposed, operated, advertised, or promoted a pyramid promotional scheme or endless chain under NRS § 598.110;

- Whether Class members' contracts and agreements with MXI are voidable under NRS § 598.120; and

- Whether Defendants engaged or are engaged in a deceptive trade practice under NRS §§ 598.092 and 598.0923.

162.    These and other questions of law and/or fact are common to the Class, and predominate over any question affecting only individual Class members.

163.    The Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs were Participants in MXI that lost money as a result of the pyramid scheme.

164.    The Plaintiffs will fairly and adequately represent the interests of the Class in that Plaintiffs' claims are typical of those of the Class and Plaintiffs' interests are fully aligned with those of the Class.  The Plaintiffs have retained counsel who are experienced and skilled in Class action litigation.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

165.   Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

166.   The Plaintiffs know of no difficulty likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## XI.   CAUSES OF ACTION

### Count One: Operation of a Pyramid Scheme in Violation of NRS § 598.100-120 (Against MXI)

167.   Plaintiffs incorporate by reference all allegations set forth above.

168.   MXI's multi-level marketing scheme constituted a pyramid scheme within the meaning of NRS § 598.100(3).

169.   Because MXI's multi-level marketing scheme was a pyramid scheme, all of MXI's contracts with all members of the Class are voidable pursuant to NRS § 598.120.

170.   Plaintiffs, on behalf of themselves and the Class, void all contracts between the Class and MXI.

171.   Plaintiffs and each member of the Class paid money to MXI pursuant to their voidable contracts with MXI.

172.   Plaintiffs demand, for themselves and on behalf of the Class, that MXI return all monies paid to MXI pursuant to the voidable and now voided contracts.

### Count Two:  Consumer Fraud (Against All Defendants)

173.   MXI's multi-level marketing scheme constituted a pyramid scheme within the meaning of NRS § 598.100(3).

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

174.    MXI and the Individual Defendants continued, prepared, set up, operated, advertised, promoted, and profited from MXI's pyramid scheme.

175.    The perpetration of a pyramid scheme is a consumer fraud pursuant to NRS § 41.600(2), NRS § 598.0915-0925, NRS § 598.110. In addition, the knowing perpetration of a pyramid scheme is a consumer fraud pursuant to NRS § 598.0923(3).

176.    Defendants knew they perpetrated a pyramid scheme because they knew the structure of and requirements of MXI's marketing scheme. Among other things, Defendants knew that MXI's Participants sold very little MXI product to retail customers and were compensated based on their success in recruiting new Participants rather than on their success in making Retail Sales.

177.    Plaintiffs and the members of the Class were victims of Defendants' pyramid scheme because they lost money invested in the pyramid scheme.

178.    Plaintiffs and the members of the Class are entitled to recover the damages they suffered from investing in Defendants' pyramid scheme, any equitable relief the Court deems appropriate, and costs and attorneys' fees.

### Count Three: Racketeering Activity
### in Violation of 18 U.S.C. §§ 1961(5) and 1962(c) (Against All Defendants)

179.    Plaintiffs incorporate by reference all allegations set forth above.

180.    Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

181.    Each of the Defendants named in this action has violated Section 1962(c) and is liable, jointly and severally, for the business injury caused to the Plaintiffs and the class by his or her actions.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

**Count Four: Racketeering Activity**
**in Violation of 18 U.S.C. §§ 1961(5) and 1962(d) (Against All Defendants)**

182.    Plaintiffs incorporate by reference all allegations set forth above.

183.    Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section"

184.    Each of the Defendants participated in a conspiracy to engage in Count Three. Each Defendant knew about and agreed to facilitate the pyramid scheme.

185.    Each of the Defendants has participated in the MXI pyramid scheme and their participation is necessarily a combination of more than two individuals.

186.    The Defendants creation, support, and maintenance of the pyramid scheme is illegal.

187.    The Defendants had a meeting of the minds on the object or course of action, specifically to create, support, and maintain the pyramid scheme for their financial benefit as evidenced by each Defendant's voluntary and knowing participation in the pyramid scheme.

188.    Each of the Defendants have committed one or more overt acts to achieve or further the unlawful objects and purposes of the pyramid scheme detailed herein.

189.    The Defendants used false and fraudulent pretenses to deceive persons of ordinary jurisprudence and due care, and made material misrepresentations, nondisclosures, and concealments of fact and information that were important to understand their pyramid scheme. The Defendants conducted their affairs unlawfully, intentionally, willfully, and with the intent to defraud, for their own financial gain and benefit and for the financial gain and benefit of others, all to the detriment of the Plaintiffs and the Class.

190.    Each of the Defendants named in this action has violated Section 1962(c) and is liable, jointly and severally, for the business injury caused to the Plaintiffs and the Class by his or her actions.

Gordon Silver
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

52 of 54

## **PRAYER FOR RELIEF**

Plaintiffs and the Class request the following relief:

a.   Certification of the Class;

b.   A judgment against each of the Defendants;

c.   Damages in the amount of the Plaintiffs' and Class's financial loss as a result of Defendants' conduct and for injury to Plaintiffs' and the Class's business and property, all as a result of Defendants' violations of 18 U.S.C. § 1962(c) and (d) and that such amount be tripled in accordance with 18 U.S.C. § 1964(c);

d.   Imposition of a constructive trust for Plaintiffs' and the Class's benefit;

e.   Disgorgement of all proceeds of the pyramid scheme by each Defendant;

f.   Relief under Nevada law including damages as provided and rescission of any contract made with MXI;

g.   The costs and expenses of suit, including reasonable attorney's fees, under 18 U.S.C. § 1964(c) and NRS § 41.600;

h.   Pre- and post-judgment interest; and

i.   For all other relief, at law or equity, to which Plaintiffs and the Class are entitled, including such other damages and relief as the Court may deem just and proper.

///

///

///

///

///

///

///

**Gordon Silver**
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Plaintiffs on their own behalf and on behalf of the Class they represent, demand a jury.

DATED this 1st day of May, 2015.

GORDON SILVER

  /s/ John P. Desmond
John P. Desmond
Nevada Bar No. 5618
Justin J. Bustos
Nevada Bar No. 10320
100 West Liberty Street
Suite 940
Reno, NV 89501
Tel:  (775) 343-7500
Fax:  (775) 786-0131
Email: jdesmond@gordonsilver.com
Email: jbustos@gordonsilver.com

*-and-*

REID COLLINS & TSAI LLP
R. Adam Swick (*pro hac vice to be filed*)
J. Benjamin King (*pro hac vice to be filed*)
1301 S. Capital of Texas Hwy, Suite C300
Austin, Texas 78746
Tel: (512) 647-6100
Fax: (512) 647-6129
Email: aswick@rctlegal.com
Email: bking@rctlegal.com

*Counsel for Plaintiffs*

**Gordon Silver**
Attorneys At Law
Suite 940
100 West Liberty Street
Reno, Nevada 89501
(775)343-7500

54 of 54