DICKINSON WRIGHT PLLC
JOHN P. DESMOND
Nevada Bar No. 5618
JUSTIN J. BUSTOS
Nevada Bar No. 10320
100 West Liberty Street, Suite 940
Reno, NV 89501
Tel:  (775) 343-7500
Fax:  (775) 786-0131
Email: jdesmond@dickinsonwright.com
Email: jbustos@dickinsonwright.com

REID COLLINS & TSAI LLP
R. Adam Swick (*pro hac vice*)
J. Benjamin King (*pro hac vice*)
1301 S. Capital of Texas Hwy, Suite C300
Austin, Texas 78746
Tel: (512) 647-6100
Fax: (512) 647-6129
Email: aswick@rctlegal.com
Email: bking@rctlegal.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ENRIQUE MARTINEZ, MICHELLE MARTINEZ, and SUNSHINE MARTINEZ-VALDEZ, Individually and on Behalf of a Class of Similarly Situated Individuals, | CASE NO. 3:15-cv-00243-MMD-VPC |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO MXI DEFENDANTS' MOTION TO STAY DISCOVERY** |
| vs. | |
| MXI CORP., *et al.*, | |
| Defendants. | |

Enrique Martinez, Michelle Martinez, and Sunshine Martinez-Valdez (collectively, **"Plaintiffs"**), individually and on behalf of a class of similarly situated individuals, file this response in opposition to the (i) MXI defendants' Motion to Stay Discovery (Doc. 79); (2)

Joinder in MXI Defendants' Motion to Stay Discovery (Doc. 80); and (3) Joinder in MXI Defendants' Motion to Stay discovery (Doc. 81) (collectively, the "**Stay Motion**").

## I.   Introduction

Consistent with the current common practice in federal civil litigation, all Defendants in this case have moved to dismiss the Complaint. There is nothing remarkable or exceptional about their motions, except that nowhere do they argue that Plaintiffs' allegations—which are drawn largely from MXI Corporation's ("**MXI**") own Rules & Regulations ǀ Policies & Procedures— insufficiently allege that MXI was and is an illegal pyramid scheme. MXI's status as a pyramid scheme is the central issue in this case, and Defendants completely failed to challenge Plaintiffs on this issue in their motions to dismiss.

Like most defendants, Defendants here want to delay the progress of litigation. The longer the delay, the longer they get to keep their money and the more likely plaintiffs will run out of resources to pursue their claims. Accordingly, Defendants have filed a run-of-mill motion requesting this Court to stay discovery until the Court rules on their motions to dismiss.

But while run-of-the-mill motions to stay discovery—like Defendants' Stay Motion—are routinely filed, they are also routinely denied. Defendants carry a "heavy burden" to show something unusual, something "extraordinary" in order to justify a stay.[1] Courts in this district stay cases pending decisions on motions to dismiss only "where the complaint was utterly frivolous, or filed merely for settlement value."[2]

Defendants' Stay Motion fails to establish "extraordinary circumstances" or that the Complaint is "utterly frivolous." To the contrary, the Stay Motion is utterly routine and the

---

[1] *Kor Media Group, LLC v. Green,* 294 F.R.D. 579, 583 (D. Nev. 2013) (quoting *Trzaska v. Int'l Game Tech.,* No. 2:10-cv-02268-JCM-GWF, 2011 WL 1233298, at *3 (D. Nev. March 29, 2011) ("'Generally, there must be *no question* in the court's mind that the dispositive motion will prevail, and therefore, discovery is a waste of effort. Absent extraordinary circumstances, litigation should not be delayed simply because a non-frivolous motion has been filed.'")).

[2] *Turner Broadcasting Sys., Inc. v. Tracinda Corp.,* 175 F.R.D. 554, 556 (D. Nev. 1997).

circumstances here are entirely usual. Defendants argue that pursuing discovery now may result in wasted expense if their motions to dismiss are granted in whole or in part. But civil defendants make the same argument whenever they seek to stay discovery pending motion to dismiss rulings. Defendants argue, of course, that they have raised strong arguments for dismissal, but they cannot come close to establishing that the Complaint is "utterly frivolous."

Plaintiffs have already agreed to a more-than-reasonable bifurcated discovery schedule as reflected in the Joint Case Management Report (Doc. 76). Plaintiffs filed the Complaint on May 1, and Defendants need not produce even the first document in discovery until late November, at the earliest. Moreover, Plaintiffs have agreed to bifurcate discovery with full merits-based discovery to proceed only after limited discovery on class certification issues.

For these reasons, Plaintiffs request that the Court deny the Stay Motion and enter the schedule set forth in the parties' Joint Case Management Report, which was agreed to by the parties, subject to the Court's ruling on the Stay Motion.

## II.    The PSLRA's Discovery Stay Provision Is Irrelevant

Defendants argued in their motions to dismiss that an investment in a pyramid scheme is an investment in an "investment contract," which is a security under federal law.[3] Defendants further argued that because Plaintiffs' investment in MXI was a security, Plaintiffs' Racketeer Influenced and Corrupt Organizations Act ("**RICO**") claims must be dismissed pursuant to 18 U.S.C. § 1964(c), which provides that plaintiffs may not ground RICO claims on conduct that would be actionable as federal securities fraud.[4] For these reasons, Defendants argued, the Court must dismiss Plaintiffs' RICO claims.[5]

Now, in the Stay Motion, Defendants argue that because Plaintiffs' RICO claims are really mispleaded securities fraud claims, they should get the benefit of the mandatory stay

---

[3] *See* MXI Defendants' Motion to Dismiss Class Action Complaint ("**MXI MTD**") at 18 (Doc. 50).
[4] *See id.* at 18.
[5] *See id.* at 18-19.

1  provision in the Private Securities Litigation Reform Act of 1995 (the "**PSLRA**"), 15 U.S.C. §
2  78u-4(b)(3)(B).

3      But the PSLRA stay provision does not apply pursuant to its express terms. The stay
4  provision applies only to "any private right of action arising under this chapter."[6] Plaintiffs'
5  RICO claims, of course, arose under the RICO statute. Indeed, that Plaintiffs brought RICO
6  claims and not securities fraud claims is the very basis for Defendants' motion to dismiss those
7  claims. Even if Defendants prevail in their argument that Plaintiffs' RICO claims are barred by
8  the PSLRA, that would only make them dismissed RICO claims, not "*de facto* securities claims."
9  The Stay Motion fails to cite a single case supporting the proposition that claims that could have
10  been, but were not, brought as securities fraud claims are "*de facto* securities claims" subject to
11  the PSLRA's stay provision.

13      In fact, the MXI Defendants' "*de facto* securities claims" argument has been repeatedly
14  rejected. In *Hillis v. Heineman*,[7] the plaintiff brought only state law claims not subject to the
15  PSLRA's discovery stay.[8] The defendant argued that the PSLRA's discovery stay applied
16  because plaintiff's state law claims could have been brought as securities fraud claims. *See id.*
17  The court rejected this argument because "[t]he PSLRA, by its terms, is limited to action[s] filed
18  under the federal securities laws and does not apply outside this context."[9]

20      Similarly, in *Koock v. Sugar & Feisenthal, LLP*,[10] the plaintiffs asserted only state law
21  causes of action.[11] Defendants argued that under the Securities Litigation Uniform Standards Act
22  ("**SLUSA**"), the plaintiffs' state law causes of action could only be brought as federal securities

---

[6] 15 U.S.C. § 78u-4(b)(3)(B).
[7] No. CV-09-73-PHX-DGC, 2009 WL 798872 (D. Ariz. March 25, 2009).
[8] *Id.* at *2.
[9] *Id.* at *3 (citation omitted).
[10] No. 8:09-CV-609-T-17EAJ, 2009 WL 2579307 (M.D. Fla. Aug. 19, 2009).
[11] *See id.* at *1.

law claims, and so the PSLRA's discovery stay applied.[12] In other words, because the plaintiffs' state law claims were "*de facto* securities claims," the PSLRA discovery stay should apply. The *Koock* court rejected that argument because, even if the SLUSA did preempt the plaintiffs' state law claims, the PSLRA discovery stay did not apply because the claims were not brought as federal securities law claims.[13]

The MXI Defendants seek to distinguish these on-point cases on the basis that Plaintiffs invoked the Court's federal subject-matter jurisdiction based on their assertion of federal RICO claims.[14] It is unclear what difference this fact makes: the PSLRA's discovery stay provision does not, by its terms, apply, regardless of the grounds for subject matter jurisdiction. But even if that mattered, this Court has federal subject matter jurisdiction based on class action diversity under the CAFA, even if there were no federal claims in the case at all.

The MXI Defendants also argue that Plaintiffs "may well choose to replead their claims under the Securities Exchange Act" if Defendants are successful in establishing that 18 U.S.C. § 1964(c) bars the RICO claims.[15] Anything is possible (although federal securities fraud claims do not provide for treble damages, as do RICO claims, so pursuing securities claims would seem to provide little additional value to Plaintiffs over their simpler state law claims), but the fact is that the PSLRA's stay does not, by its terms and consistent with *Hillis* and *Koock,* apply to the only claims Plaintiffs have brought thus far, not to some hypothetical claims that could be brought in the future. The Stay Motion cites no cases for the proposition that this Court should consider what claims Plaintiffs might bring, should have brought, or could have brought, as opposed to what claims they *did bring*, in deciding whether the PSLRA stay applies.

---

[12] *See id.* at *2.
[13] *See id.* at *2 n.1.
[14] *See* Stay Motion at 5 n.2.
[15] *See id.*

### III.   A "Preliminary Peek" at Defendants' Motions to Dismiss Does Not Compel the Conclusion that Plaintiffs Will Be Unable to State a Claim for Relief

The MXI Defendants argue that Judge Du's Civil Standing Order No. 1 supports a liberal granting of discovery stays, or at least a more liberal approach than generally called for by courts in this District.[16] The MXI Defendants' misinterpretation of Standing Order No. 1 is inconsistent with Judge Du's statement of the standards for considering motions to stay discovery pending ruling a motion to dismiss:

> "A party seeking a stay of discovery *carries the heavy burden* of making a 'strong showing' why discovery should be denied." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975)." *Ordinarily, a pending motion to dismiss is not a situation that would mandate a stay of discovery. See Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D.Nev. Mar. 8, 1989). However, *preliminary issues* such as jurisdiction, venue, or immunity *can* justify such a stay. *Id.* In such circumstances, a court may stay discovery. *See* C.A. Wright, Discovery, 35 F.R.D. 39, 60 (1964) ("An obvious application of this principle—salutary if *applied sparingly and with real discretion* rather than as an absolute rule—is that courts may stay discovery on the merits of an action until challenges to jurisdiction have been resolved.").[17]

Here, the MXI Defendants have failed to carry their "heavy burden," have not presented a situation out of the ordinary requiring a stay of discovery, and have not argued that the Complaint fails on any "preliminary issue[] such as jurisdiction, venue, or immunity."

First, Defendants rely on their dismissal argument that Plaintiffs' state law claims are time-barred.[18] This argument fails entirely as a basis for a stay because, most obviously, Defendants moved to dismiss the state law claims of only two of the three Plaintiffs based on limitations.[19] Moreover, the two Plaintiffs against whom the limitations argument is directed purchased chocolate from MXI *both inside and outside* the three- and four-year limitation

---

[16] *See* Stay Motion at 6; *supra* at 2-3 (setting forth the standard for reviewing motions to stay pending a ruling on motions to dismiss).

[17] *See Holiday Sys. Intern. of Nevada v. Vivarelli, Schwarz, and Associates, S.A. de. C.V.*, No. 2:10-cv-00471-MMD-GWF, 2012 WL 3860824, at *2 (D. Nev. Sept. 5, 2012) (affirming magistrate judge's denial of request to stay discovery pending ruling on a motion to dismiss) (Du, J.) (bold emphases added).

[18] *See* Stay Motion at 6.

[19] *See* MXI MTD at 11 n.11 ("[T]his motion to dismiss is not directed towards [Sunshine Martinez's] claims under Counts I and II."

-6-

periods Defendants claim apply. Thus, the success of Defendants' limitations argument depends on the unlikely proposition that because Defendants victimized two of the Plaintiffs outside the limitations period, they have free license to continue to victimize those Plaintiffs within the limitations period.[20]

Second, the MXI Defendants claim that Plaintiffs' RICO claims are barred by the PSLRA,[21] but as Plaintiffs noted in their opposition to the motions to dismiss, the only court to consider Defendants' argument ruled that, at the motion to dismiss stage, the court could not determine that an investment in a pyramid scheme much like the MXI scheme constituted a security for purposes of the federal security laws.[22] Certainly, the Court cannot determine from a "preliminary peek" that Defendants are certain to prevail on their PSLRA argument.

Moreover, the MXI Defendants' argument that a grant of some portion of the motions to dismiss will "narrow substantially" the issues in this case[23] overlooks the fact that the parties have agreed to bifurcate discovery. The first phase of discovery will only regard class certification issues, not merits issues. Thus, the first phase of discovery is already narrowed substantially by agreement of the parties. In any event, Defendants' argument on this point does not identify an extraordinary circumstance that can justify a stay.

Finally, while Plaintiffs do not bear the burden to "identif[y] a need to commence discovery prior to a ruling on the" motions to dismiss,[24] Plaintiffs' reasons include a concern that if they do not move quickly to resolve this case, MXI will be financially unable to satisfy a

---

[20] *See* Response in Opposition to Defendants' Motion to Dismiss ("**MTD Opp.**") at 7-11.
[21] *See* Stay Motion at 6.
[22] *See* MTD Opp. at 22 (citing *Kerrigan v. ViSalus, Inc.,* No. 14-cv-12693, 2015 WL 3679266 (E.D. Mich. June 12, 2015)).
[23] *See* Stay Motion at 6.
[24] *See id.* at 7.

judgment. The owners and principal managers of MXI are the Brooks family: Martin, Jeanette, and Andrew. Press reports indicate that they have had a long history of business failures:[25]

**Yurika Foods:** In 1982, Jeanette Brooks and partners started Yurika Foods, another "multi-level marketing" firm. It filed for bankruptcy in 1985.

**Phoenix International Corporation ("Phoenix"):** In 1988, Jeanette Brooks founded Phoenix International Corporation, another MLM of supposed health products. In 1990, the FDA charged Phoenix with falsely promoting products as having health benefits. The company faded away in the wake of bad press following the FDA allegations.

**Pure De-lite Products:** Jeanette Brooks was the founder of Pure De-lite, another now-defunct "healthy foods" business.

**Personal bankruptcy:** Jeanette and Martin Brooks declared bankruptcy in February 2002. News reports claim they faced over $36 million in creditor claims.

The longer this case takes, the more likely it is that MXI will go out of business and its funds will be dispersed, making the job of collecting on a judgment more difficult.

## IV.   Conclusion

Plaintiffs filed this case on May 1, 2015. Plaintiffs have agreed to a leisurely schedule that does not require Defendants to produce even a single document until late November, at the earliest. But the MXI Defendants hope to stall this case indefinitely, until after Judge Du (who was assigned the case only recently, on September 29, 2015) rules on the motions to dismiss. (And of course, after that ruling, if Plaintiffs need to amend, Defendants will surely request that discovery be stayed again, until they have had an opportunity to seek dismissal of any amended pleadings.)

However, the Stay Motion cannot carry the "heavy burden" of making a "strong showing" that a discovery stay is appropriate. The circumstances here are entirely usual and not

---

[25] *See* Debra Jopson, "Sweet schemes: the great chocolate rip-off," The Sydney Morning Herald (Aug. 2, 2008)(Ex. A); "Sixteen years of a Brooks roller-coaster," The Sydney Morning Herald (Aug. 2, 2008)(Ex. B); Nathan M. Jenkins, "Response to Sydney Morning Herald Articles" (Undated)(Ex. C); May 4, 1990, Regulatory Letter from the U.S. Department of Health & Human Services to Martin J. Brooks, President and CEO of Phoenix International Marketing Corporation (Ex. D).

at all extraordinary. For these reasons, Plaintiffs request that the Court deny the Stay Motion and

enter the schedule agreed to by the parties in the Joint Case Management Report.

DATED this 15th day of October, 2015.

DICKINSON WRIGHT PLLC

/s/ John P. Desmond
JOHN P. DESMOND
Nevada Bar No. 5618
JUSTIN J. BUSTOS
Nevada Bar No. 10320
100 West Liberty Street
Suite 940
Reno. NV 89501
Tel:  (775) 343-7500
Fax:  (775) 786-0131
Email: jdesmond@dickinsonwright.com
Email: jbustos@dickinsonwright.com

-and-

REID COLLINS & TSAI LLP
R. Adam Swick (*pro hac vice*)
J. Benjamin King (*pro hac vice*)
1301 S. Capital of Texas Hwy, Suite C300
Austin, Texas 78746
Tel: (512) 647-6100
Fax: (512) 647-6129
Email: aswick@rctlegal.com
Email: bking@rctlegal.com

*Counsel for Plaintiffs*

-9-

## CERTIFICATE OF SERVICE

I certify that I am an employee of DICKINSON WRIGHT PLLC, and that on this date the within document entitled **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** was electronically filed with the Clerk of the court using the CM/ECF system, which will automatically e-serve the same on the attorney of record set forth below:

Nathan M. Jenkins
JENKINS LAW FIRM
501 Hammill Lane
Reno, NV 89511-1004
nathan@njenkinslaw.com

Brian A. Howie
Edward A. Salanga
Kevin D. Quigley
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004
brian.howie@quarles.com
edward.salanga@quarles.com
kevin.quigley@quarles.com

Douglas R. Rands
RANDS, SOUTH & GARDNER
9498 Double R Blvd., Suite A
Reno, NV 89521
drands@rsgnvlaw.com

Lesley B. Miller
KAEMPFER CROWELL
1980 Festival Plaza Drive, Ste. 650
Las Vegas, NV 89135
lmiller@kcnvlaw.com

*Attorneys for Defendants Dr. Gordon Pedersen, Connie Hollstein, Sherman Smith, Ruth Smith, William "Butch" Swaby, Carolyn Swaby, Felix Gudino, Lisa Gudino, Glen Overton, Kim Overton, Adam Paul Green, Melannie Green, Jeremy Reynolds, Karen Reynolds, Derrick Winkel, Naomi Winkel, Paul Engemann, and Suzanne Engemann*

*Attorneys for Defendants Paula Pritchard, Kathleen Robbins, Ian Murray, Judy Murray, Sandy Chambers, and Kerry Dean*

DATED this 15th day of August, 2015.

/s/ Cindy S. Grinstead
An employee of Dickinson Wright PLLC

-10-

# EXHIBIT TABLE

| Exhibit | Description | Pages |
|---|---|---|
| A | Debra Jopson, "Sweet schemes: the great chocolate rip-off," The Sydney Morning Herald (Aug. 2, 2008) | 3 |
| B | "Sixteen years of a Brooks roller-coaster," The Sydney Morning Herald (Aug. 2, 2008) | 2 |
| C | Nathan M. Jenkins, "Response to Sydney Morning Herald Articles" (Undated) | 5 |
| D | May 4, 1990, Regulatory Letter from the U.S. Department of Health & Human Services to Martin J. Brooks, President and CEO of Phoenix International Marketing Corporation | 4 |