UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ENRIQUE MARTINEZ, MICHELLE MARTINEZ, and SUNSHINE MARTINEZ-VALDEZ, Individually and on Behalf of a Class of Similarly Situated Individuals,<br><br>        Plaintiffs,<br>   v.<br><br>MXI CORP., *et al.*,<br><br>        Defendants. | 3:15-cv-00243-MMD-VPC<br><br>**<u>ORDER</u>** |

Before the court is a motion to stay discovery (#79), filed or joined (#s 80, 81) by all defendants named in this action. Defendants request that the court exercise its discretion to stay discovery on all matters until defendants' motions to dismiss are decided. Plaintiffs opposed the motion (#82), and defendants replied (#s 84, 85). The court has reviewed the relevant pleadings and papers, and, for the reasons set forth below, denies the motion to stay discovery.

### I.   BACKGROUND

MXI is a Nevada-based company that uses a multi-level marketing system to distribute "healthy" chocolate products. Enrique Martinez, Michele Martinez, and Sunshine Martinez-Valdez ("plaintiffs") are MXI participants. Through this action, plaintiffs seek relief for themselves and on behalf of a class of MXI participants who, like them, lost the money they invested into the company. The complaint contends that MXI is a pyramid scheme, "fraudulent by [its] very nature," and asserts violations of Nevada law and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). (#1 at 2–4.) Plaintiffs invoke the subject-matter jurisdiction of this court based on their federal claims, but also note that class action diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(d). (*Id.*)

1        Three groups of defendants are named in plaintiffs' complaint, each of which is represented
2   by separate counsel: MXI Corporation, Martin Brooks, Jeanette Brooks, and Andrew Brooks
3   ("MXI defendants"); Dr. Gordon Pedersen, Connie Hollstein, Sherman Smith, Ruth Smith, William
4   Swaby, Carolyn Swaby, Felix Gudino, Lisa Gudino, Glen Overton, Kim Overton, Adam Paul
5   Green, Melanie Green, Jeremy Reynolds, Karen Reynolds, Derrick Winkel, Naomi Winkel, Paul
6   Engemann, and Suzanne Engeman ("Distributor defendants"); and Paula Pritchard, Kathleen
7   Robbins, Ian Murray, Judy Murray, Sandy Chambers, and Kerry Dean ("Dean defendants") (all
8   collectively, "defendants").  The MXI defendants, joined by the Distributor defendants, moved to
9   dismiss the instant case on July 20, 2015 (#s 50, 54).  The Dean defendants followed suit with a
10  separate motion to dismiss on July 27, 2015 (#57).  Plaintiffs responded to both motions (#67), and
11  defendants replied (#s 72, 73, 74).  On October 9, 2015, defendants moved to stay discovery
12  pending resolution of the motions to dismiss.

13       The parties also lodged with the court a case management report (#76), therein describing a
14  bifurcated discovery schedule.  The first phase of discovery will solely concern class certification
15  issues, and is to conclude by March 31, 2016.  (#76 at 9.)  Phase two, beginning July 6, 2016, will
16  address the merits of plaintiffs' claims.  (*Id.*)

## II.  DISCUSSION

**A.  The PSLRA does not mandate a stay of discovery in the present action.**

Defendants first argue that all discovery is this matter must be stayed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 77a *et seq.* (#79 at 3–5.) Plaintiffs counter that defendants' reliance on the PSLRA has no bearing here, as none of their claims arise under the federal securities laws. (#82 at 4.)

The PSLRA was passed in 1995 to address perceived abuses in federal securities class-action litigation, including the abuse of the discovery process. *SG Cowen Sec. Corp. v. U.S. Dist. Court*, 189 F.3d 909, 911 (9th Cir. 1999).  So as to "prevent [the] unnecessary imposition of discovery costs on defendants," § 78u-4(b)(3)(B) provides:

> In any private action *arising under this chapter*, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

*Id.* (quoting H.R. Rep. No. 104-369, at 32 (1995) (Conf. Rep.); 15 U.S.C. § 78u-4(b)(3)(B)) (emphasis added).

There is some ambiguity as to whether the mandatory stay extends to state securities claims or non-securities claims that are brought in actions involving federal securities claims. *See Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162, 165 (S.D.N.Y. 2001). In *SG Cowen Securities Corporation*, the Ninth Circuit rejected the argument that discovery should proceed on pendent state law claims, despite the stay's application to plaintiff's federal securities claims, as to allow such a move would render Congress's attempt to address discovery abuse meaningless. 189 F.3d at 913 n.1. Where the state law claims are "separate and distinct" from the federal securities claims, however, allowing discovery to move forward as to the state law claims may "not represent an impermissible 'end run' around the PSLRA[.]" *Tobias Holdings*, 177 F. Supp. 2d at 167.

Here, defendants maintain that the PSLRA stay provision is triggered because plaintiffs, through "artful pleading," disguised their *de facto* federal securities law claims as RICO claims. (#79 at 5–6.) Defendants reason as follows: The Ninth Circuit held in *Webster v. Omnitrition International, Inc.*, 79 F.3d 776, 784 (9th Cir. 1996) that investments in a pyramid scheme are investment contracts, and are thus securities pursuant to federal securities laws. (*Id.* at 3.) Plaintiffs' insistence that MXI operates a pyramid scheme, therefore, compels the court to characterize plaintiffs' claims as ones of securities fraud, and to treat this case as a securities class action. (*Id.* at 4.) Because the PSLRA stays discovery in securities class actions, it must stay discovery here. (*Id.* at 4–5.)

Defendants' reasoning ignores the express language of the PSLRA. Congress limited the stay provision to private actions "arising under" Chapter 2B of Title 15 of the United States Code, where the Securities Exchange Act of 1934 is codified. 15 U.S.C. § 78u-4(b)(3)(B); *In re Countrywide Fin. Corp. Deriv. Litig.*, 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008). By its terms, then, the provision "does not apply outside this context." *In re FirstEnergy S'holder Deriv. Litig.*,

219 F.R.D. 584, 586 (N.D. Ohio 2004); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 251 n.14 (D. Md. 2004) (noting that the PSLRA does not encompass claims brought under the Employee Retirement Income Security Act). As plaintiffs point out, they have not pled claims that arise from the Securities Exchange Act of 1934; their RICO claims, "of course, arose under the RICO statute." (#82 at 4.)

Accordingly, the situation before the court is distinct from those considered in *SG Cowen* or *Tobias Holdings*. Plaintiffs do not assert claims under federal securities law, and yet defendants argue that the mandatory stay is triggered because plaintiffs' RICO claims *should* have been pled as such. (#79 at 5–6.) An analogous argument has been raised by defendants to state law derivative suits, and rejected by the reviewing courts. *See FirstEnergy*, 219 F.R.D. at 586 (finding the argument that plaintiffs "merely alleged federal securities law claims dressed up in the language of derivative claims" unpersuasive); *Hillis v. Heineman*, No. CV-09-73-PHX-DGC, 2009 WL 798872, at *3 (D. Ariz. Mar. 25, 2009) (rejecting the argument that "discovery should be stayed under the PSLRA because the claims sound in a number of violations of securities fraud" (internal quotation omitted)). Similarly, in light of the plain language of the statute, the court concludes that application of the PSLRA stay provision would be improper.

**B.      Defendants' pending motions to dismiss do not justify a stay of discovery.**

In the alternative, defendants maintain that the court should exercise its discretion to stay discovery based on the strength of the motions to dismiss, and to avoid wasting time and resources on discovery matters sure to become moot. (#79 at 6–7.) Plaintiffs defend the viability of their complaint, and also maintain that the circumstances of this case are not so extraordinary as to warrant a stay of discovery. (#82 at 2–3.)

A district court enjoys broad discretion in controlling discovery. *Little v. City of Seattle*, 863 F.3d 681, 685 (9th Cir. 1988). Under the Federal Rules of Civil Procedure, the court may stay or limit the scope of discovery upon a showing of good cause by the moving party. Fed. R. Civ. P. 26(c). Where appropriate, a stay of discovery "furthers the goal of efficiency for the court and the litigants." *Little*, 863 F.3d at 685 (approving a stay pending resolution of the issue of immunity,

1   where discovery would not have affected the decision). Still, meeting the "good cause"
2   requirement is no easy task. The party seeking the stay must make a "strong showing" as to why
3   discovery should be denied; broad statements about inconvenience, cost, or a need for protection
4   are insufficient. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Ministerio Roca
5   Solida v. U.S. Dep't of Fish & Wildlife*, 288 F.R.D. 500, 503 (D. Nev. 2013).

6   While the purpose of a 12(b)(6) motion is "to enable defendants to challenge the legal
7   sufficiency of a complaint without subjecting themselves to discovery," *Tradebay, LLC v. eBay,
8   Inc.*, 278 F.R.D. 597, 601 (D. Nev. 2011) (citing *Rutman Wine Co. v. E & J Gallo Winery*, 829 F.2d
9   729, 738 (9th Cir. 1987), a pending motion to dismiss ordinarily will not justify a stay of discovery,
10  *Ministerio Roca Solida*, 288 F.R.D. at 502. This is true even where the underlying motion appears
11  meritorious. *Id.* Rather, courts within this District have consistently held that "a district court may
12  stay discovery only when it is *convinced* that the plaintiff will be unable to state a claim for relief."
13  *Id.* at 502–04 (discussing *Twin City Fire Ins. Co. v. Emp'rs Ins. of Wasau*, 124 F.R.D. 652, 653 (D.
14  Nev. 1989); *Turner Broad. Sys., Inc. v. Tracinda Cop.*, 175 F.R.D. 554, 556 (D. Nev. 1997); and
15  *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981)) (emphasis in original). The most common
16  situations in which a stay is justified are those in which a dispositive motion raises preliminary
17  issues of jurisdiction, venue, or immunity. *Twin City Fire*, 124 F.R.D. at 653.

18  To determine if a stay of discovery is appropriate, the court considers whether the pending
19  motion is potentially dispositive of the entire case; whether the motion can be decided without
20  additional discovery; and whether the court is convinced that the plaintiff cannot state a claim for
21  relief. *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev. 2013); *First Am. Title Ins.
22  Co. v. Commerce Assocs., LLC*, No. 2:15-cv-832-RFB-VCF, 2015 WL 7188387, at *2 (D. Nev.
23  Nov. 13, 2015). This evaluation requires the court to take a "preliminary peek" at the merits of the
24  underlying dispositive motion. *Tradebay*, 278 F.R.D. at 602–03. In doing so, the court is to keep
25  in mind the objectives of Rule 1 of the Federal Rules of Civil Procedure: "to secure the just, speedy
26  and inexpensive determination of every action and proceeding." *Ministerio Roco Solida*, 288
27  F.R.D. at 504 (quoting Fed. R. Civ. P. 1). This is particularly true in a post-*Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) world, where the "explosion of Rule 12(b)(6) motions . . . has made speedy determinations of cases increasingly more difficult." *Id.* at 504. Accordingly, "this court must decide whether it is more just to speed the parties along in discovery and other proceedings while a dispositive motion is pending, or whether it is more just to delay or limit discovery and other proceedings to accomplish the inexpensive determination of the case." *Tradebay*, 278 F.R.D. at 603.

With these principles in mind, the court turns to the pleadings and motions underlying defendants' request to stay discovery.[1] Plaintiffs' complaint raises four claims. In count I, plaintiffs allege that defendants operated a pyramid scheme in violation of Nev. Rev. Stat. §§ 598.100–.120. Count II alleges that defendants perpetrated consumer fraud in violation of Nevada's Deceptive Trade Practices Act ("DTPA"), *id.* §§ 598.0915–.0925. Counts III and IV contend that defendants engaged in racketeering activity in violation of RICO, 18 U.S.C § 1962(c)–(d). (#1 at 50–52.)

The MXI defendants' motion to dismiss, which was joined by the Distributor defendants, responds that (1) Enrique and Michelle Martinez's state law claims are barred by the statute of limitations; (2) under count I, plaintiffs improperly seek to rescind their participant contracts without first tendering the return of benefits received; (3) investments in a pyramid scheme cannot, as a matter of law, establish violations of RICO; and (4) the complaint fails to allege facts sufficient to establish the elements of the claims asserted, to adequately ascribe the alleged wrongs to certain individual defendants, or to meet the pleading standards set forth in *Twombly*, *Iqbal*, and Rule 9(b) of the Federal Rules of Civil Procedure. (#50; #54.) The Dean defendants raise similar arguments, contending that (1) plaintiffs' count II DTPA claim is time-barred; (2) plaintiffs fail to meet Rule 9(b)'s heightened pleading standards for consumer fraud; (3) plaintiffs fail to meet the heightened

---

[1] As Judge Leen observed in *Tradebay*, "taking a 'preliminary peek' and evaluating a pending dispositive motion puts a magistrate judge in an awkward position." 278 F.R.D. at 602. "The district judge will decide the dispositive motion and may have a different view of the merits of the underlying motion." *Id.* Thus, this court considers defendants' motions to dismiss not to prejudge the outcome, but to evaluate the probable likelihood of success.

pleading standards for a claim of racketeering; and (4) some of the defendants named in plaintiffs' complaint were improperly named as individuals, rather than the companies under which they conduct business. (#57.)

Together, defendants' motions are potentially dispositive of the entire case. Nevertheless, the court concludes that defendants fail to make the "strong showing" necessary to support a stay of discovery. At the outset, the court notes that jurisdiction, venue, and immunity are not at issue. Federal jurisdiction is based on both the federal questions raised in the complaint and on class action diversity. (#1 at 2–3.) If the federal claims are dismissed, jurisdiction over the state law claims will still be proper. *See Tobias Holdings*, 177 F. Supp. 2d at 166. In addition, with regard to the alleged pleading deficiencies, the district court may grant plaintiffs leave to amend the complaint. Thus, even if defendants are correct that plaintiffs have not yet met the relevant pleading standards, a stay is unwarranted on those grounds alone.

The court does agree with defendants that plaintiffs' RICO claims are unlikely to move forward. Section 1964(c) of the PSLRA "amended RICO so that 'no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [18 U.S.C.] § 1962.'" *Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) (quoting 18 U.S.C. § 1964(c) (Supp. II 1996)). As defined by federal securities laws, an investment contract is a security. *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 296 (1946). The Supreme Court, in turn, defined an investment contract as a "scheme involv[ing] an investment of money in a common enterprise with profits to come solely from the efforts of others." *Id.* at 301. Applying *Howey*'s definition, the Ninth Circuit subsequently held that investments in the "Dare to be Great" pyramid scheme were "investment contracts," and were therefore securities.[2] *S.E.C. v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476 (9th Cir. 1973). This position was reiterated by *Omnitrition*, where the Ninth Circuit declared that "[i]f Omnitrition's program is a pyramid scheme, investments in the

---

[2] The *Glenn W. Turner* court noted that the word "solely" in the *Howey* definition "should not be read as a strict or literal limitation on the definition of an investment contract, but rather must be construed realistically . . . ." 474 F.2d at 482. Accordingly, that the investors at issue were required to contribute some effort in addition to money did not preclude a finding that the pyramid scheme was an investment contract. *Id.*

program's supervisor positions are securities." 79 F.3d at 784. *Glenn W. Turner* and *Omnitrition* are binding on this court. Accordingly, if plaintiffs' allegations are accepted as true, investments in MXI are securities, and plaintiffs allege conduct that is actionable as securities fraud. Such claims cannot be used to establish a RICO violation.

At this stage in the proceedings, however, it is not clear that plaintiffs' state law claims are barred by the applicable statutes of limitation. Nevada courts recognize both a "general rule" and a "discovery rule" with regard to the accrual of a cause of action for statute of limitations purposes:

> The general rule concerning statutes of limitation is that a cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought. An exception to the general rule has been recognized by this court and many others in the form of the so-called "discovery rule." Under the discovery rule, the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action.

*Bemis v. Estate of Bemis*, 967 P.2d 437 (Nev. 1998). Dismissal of an action based on the statute of limitations "is only appropriate when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the facts giving rise to the cause of action." *Id.* (internal quotation omitted). Here, the parties disagree as to when the limitations periods began to run as to each of the state law claims.

In count I, plaintiffs allege that defendants operated a pyramid scheme as defined by Nev. Rev. Stat. § 598.100, and thus that "all contracts and agreements" between plaintiffs and MXI are voidable. (#1 at 50.) Under Nevada law, "[a]ll contracts and agreements, existing or made in the future, which have any part of the consideration given for the right to participate in a pyramid promotional scheme . . . are against public policy and voidable by a participant." Nev. Rev. Stat. § 598.120. No limitations period is identified in the statute, *see id.* § 598.100–.130, but a three-year statute of limitations for "action[s] upon a liability created by a statute, other than a penalty or forfeiture," appears to apply. *Id.* § 11.190(3)(a). Defendants insist that the sole contract between plaintiffs and MXI was formed in October 2008, when plaintiffs became MXI participants, and that plaintiffs' opportunity to void the agreement expired in October 2011. (#50 at 5–6.) While defendants may ultimately prevail on this issue, it is clear that MXI and plaintiffs engaged in an

ongoing series of transactions between October 2008 and the filing of plaintiffs' complaint. In addition to chocolate, the parties would have exchanged annual renewal documents and fees. (#50-1 at 17; #67 at 8.) Further discovery could prove that such transactions created new contracts, some of which are not time-barred and are still voidable under Nev. Rev. Stat. §598.120.

Plaintiffs' DPTA claims, raised in count II, are subject to a four-year statute of limitations. The cause of action accrues "when the aggrieved party discovers, or by the exercise of due diligence should have discovered, the facts constituting the deceptive trade practice." Nev. Rev. Stat. § 11.190(2)(d). Defendants again maintain that the accrual date was in October 2008, reasoning that the deceptive trade practices alleged by plaintiffs are based on MXI's structure and compensation scheme. (#50 at 10–11; #57 at 3–4.) It follows, according to defendants, that plaintiffs were put on notice of "the facts constituting the deceptive trade practice" upon their initiation as MXI participants, when they received or could access company documents describing said policies. (*Id.*) Defendants' argument, however, glosses over an important nuance. It is not clear from MXI's application materials, rules, or regulations that MXI operates a pyramid scheme. (*See* #50-1.) Rather, as defendants acknowledge, the official policies discourage practices associated with pyramid schemes, such as inventory loading, and instead identify the program as a legitimate multi-level marketing system. (*See* #50 at 4.) Based on the facts alleged, the court cannot say as a matter of law that plaintiffs knew or should have known of the allegedly deceptive trade practices in 2008, or at any other date prior to May 2011. (*See* #1 at 13–14.)

Finally, the court is not persuaded that plaintiffs must tender benefits received to MXI prior to voiding the participant agreements, as sought under count I. (#50 at 12–13.) As a general rule, a party seeking rescission of a contract must return the benefits conferred on them by the other party, but the rule is not absolute. *Mackintosh v. Cal. Fed. Sav. & Loan Ass'n*, 935 P.2d 1154, 1163 (Nev. 1997). "The restoration of consideration or benefits may not be required where the tender is unreasonable, impossible, futile[;] when the defendant is directly responsible for the plaintiff's inability to return the subject matter of the rescinded contract[;] . . . . where the consideration is worthless or of no value[;] or where the benefits received are worthless or illusory." 17B C.J.S.

*Contracts* § 654 (2015). In addition, the cases defendants cite show that a court *may* dismiss a claim based on a failure to tender, but that dismissal is not mandatory absent a statutory directive. *See Vietor v. Commonwealth Land Title*, No. C-07-06453 EDL, 2010 WL 545856, at *3–*4 (N.D. Cal. Feb. 11, 2010) (dismissing rescission claim where the Truth in Lending Act required plaintiff to return money or property to defendant within twenty days); *Thorstenson v. ARCO Alaska, Inc.*, 780 P.2d 371, 375 (Alaska 1989) ("[T]he purpose of the [tender back] rule does not justify the trial court's decision to dismiss [plaintiff's] action for failure to tender back the allowance. [Defendant] will be adequately protected if the trial court grants [plaintiff] reasonable time to tender back his termination allowance with interest."). As Nev. Rev. Stat. § 598.120 does not require plaintiffs to return benefits as an antecedent to their claim, a failure to do at present so does compel dismissal.

### III.  CONCLUSION

In sum, the court is not convinced at this time that plaintiffs will be unable to state any claim for relief. Proceeding with discovery while defendants' motion to dismiss is pending will further the just and speedy determination of this case, and may shed considerable light on the questions raised by the parties' statute of limitations arguments. Moreover, given that the parties have agreed to a bifurcated discovery plan, the court does not find that denial of the instant motion "risks a large-scale waste of time and resources." (#79 at 6.)

Having determined that defendants have failed to make the strong showing required to stay discovery pending a decision on the motions to dismiss, the court hereby **DENIES** defendants' motion to stay (#79).

**IT IS SO ORDERED.**

**DATED:** December 8, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**