1

2

3

4

5

6                         UNITED STATES DISTRICT COURT

7                                DISTRICT OF NEVADA

8                                        * * *

9    ENRIQUE MARTINEZ, MICHELLE              Case No. 3:15-cv-00243-MMD-VPC
     MARTINEZ, and SUNSHINE MARTINEZ-
10   VALDEZ, individually and on Behalf of a           ORDER
     Class of Similarly Situated Individuals,
11                                            (Defendants Andrew Brooks, Jeanette
                              Plaintiffs,     Brooks, Martin Brooks, and MXI Corp.'s
12                                             Motion to Dismiss – dkt. no. 50
          v.
13                                           "Distributor Defendants" Motion to Dismiss
                                                      – dkt. no. 54
14   MXI CORP, et al.,
                                             Defendants Sandy Chambers, Kerry Dean,
15                            Defendants.     Ian Murray, Judy Murray, Paula Prtichard,
                                             and Kathleen Robbinns'  Motion to Dismiss
16                                                      – dkt. no. 57)

17

18   **I.    SUMMARY**

19          Plaintiffs Enrique Martinez, Michelle Martinez, and Sunshine Martinez-Valdez

20   seek to represent a class of plaintiffs asserting claims against Defendants under the

21   Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961

22   *et seq.*; Nevada's statutory ban on pyramid schemes, Nev. Rev. Stat. §§ 598.100-120;

23   and Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0920, 598.0923.

24   The essence of each of Plaintiffs' claims is that MXI operates as an illegal pyramid

25   scheme and has cheated thousands of participants out of millions of dollars.

26          Before the Court are motions to dismiss filed by Defendants MXI Corp., Martin

27   Brooks, Jeanette Brooks, and Andrew Brooks' (collectively "MXI") (dkt. no. 50.) and

28   Defendants Sandy Chambers, Kerry Dean, Ian Murray, Judy Murray, Paula Pritchard,

and Kathleen Robbins ("Dean Defendants") (dkt. no. 57.). Also before the Court are Defendants Gordon Pedersen, Connie Hollstein, Sherman Smith, Ruth Smith, William Swaby, Carolyn Swaby, Felix Gudino, Lisa Gudino, Glen Overton, Kim Overton, Adam Green, Melannie Green, Jeremy Reynolds, Karen Reynolds, Derrick Winkel, Naomi Winkel, Paul Engemann, and Suzanne Engemann's ("Distributor Defendants") motion to dismiss and joinder to MXI's motion. (Dkt. no. 54.)

The Court has reviewed these motions as well as Plaintiffs' response (dkt. no. 67) and the various defendants' replies (dkt. nos. 72-74).

For the reasons below, MXI's motion, the Distributor Defendants' motion, and the Dean Defendants' motion are granted in part and denied in part.

## II.   BACKGROUND

The following allegations are taken from the Complaint. (Dkt. no. 1.)

MXI is a Nevada corporation that markets a line of chocolate products called Xocai. (*Id.* at ¶10.) Xocai (pronounced *show-sigh*) chocolates are marketed as health products. (*Id.*) According to Plaintiffs, though MXI presents itself as a multi-level marketing organization, it is in fact an illegal pyramid scheme. (*Id.*)

Martin Brooks, Jeanette Brooks, and Andrew Brooks founded MXI. Martin Brooks is the company's former CEO, Jeanette Brooks is its current CEO, and Andrew Brooks is the current CFO. (*Id.* at ¶¶ 20-22.) The Brooks all reside in Reno, Nevada. (*Id.*) Dr. Gordon Pederson, a resident of Utah, is MXI's Chief Education Advisor. (*Id.* at ¶ 23.) Plaintiffs refer to these defendants collectively as the "Manager Defendants." (*Id.* at ¶ 24.) The remainder of the named defendants are scattered across the country and are current or former high-level members of MXI. (*Id.* at ¶ 25-38.)

In order to join MXI, participants must first pay an application fee of $39.00. (*Id.* at ¶ 49.) Participants must also pay a $25.00 renewal fee annually. (*Id.* at ¶ 50.) New participants must purchase Xocai chocolate at retail before they join, and then must continuously purchase either $110 or $220 worth of Xocai every four weeks depending on their rank within the organization. (*Id.* at ¶¶ 52-53.) Plaintiffs allege that MXI's various

policies and compensation schemes encouraged participants to "inventory load" — or buy more chocolate for the purpose of advancing in the organization rather than for retail sales. (*Id.* at ¶¶ 55-59.) They further allege that the bulk of participant compensation comes from recruiting rather than retails sales. (*Id.* at ¶ 60.)

As evidence of the insignificance of retail sales, Plaintiffs point to sales of Xocai on Amazon.com and eBay.com, where participants are selling products well below wholesale price, at a loss. Plaintiffs allege that this is because participants are desperate to unload product in order to recoup at least some of their losses. (*Id.* at ¶¶ 87-88.)

MXI's order forms include language indicating that the participant is ordering chocolate for retail sales and personal consumption rather than for promotion within the company, and that at least 70% of the participants' previous sales resulted in retail sales. (*Id.* at  ¶ 101.) MXI also allows participants to return or exchange chocolate purchases, with some caveats, within 60 days of purchase, for "credit, replacement, or refund." (*Id.* at ¶ 109.) Plaintiffs allege that both of these policies are shams simply meant to shield MXI from liability rather than prevent inventory loading. (*Id.* at ¶¶ 106, 111.)

Plaintiffs Enrique Martinez and Michelle Martinez are married and are residents of New Mexico. (*Id.* at 17.) Plaintiff Sunshine Martinez-Valdez is also a resident of New Mexico. (*Id.* at ¶ 18.) Enrique Martinez joined MXI in 2008. (*Id.* at ¶ 132.) The Complaint does not specify when Michelle Martinez or Sunshine Martinez-Valdez joined. In total, Enrique and Michelle Martinez invested over $200,000 in MXI fees and products, and Sunshine Martinez-Valdez invested approximately $2,000. (*Id.* at ¶¶134-35.)

Plaintiffs now seek to represent a class consisting of plaintiffs who paid fees and purchased product from MXI after May 1, 2011, and lost money in the scheme. The Complaint includes four counts: 1) operating a pyramid scheme in violation of state law, 2) consumer fraud in violation of state law, 3) participating in racketeering activity in violation of federal law, and 4) conspiring to conduct racketeering activity in violation of federal law.

///

3

1    Defendants, in three separate groups, filed three motions to dismiss. The motions

2    ask the Court to dismiss the Complaint pursuant to Rules 8(a), 9(b), and 12(b)(6) of the

3    Federal Rules of Civil Procedure.

4    **III.    MOTIONS TO DISMISS**

5         **A.    Legal Standard**

6         A court may dismiss a plaintiff's complaint for "failure to state a claim upon which

7    relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must

8    provide "a short and plain statement of the claim showing that the pleader is entitled to

9    relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

10   The Rule 8 notice pleading standard requires Plaintiff to "give the defendant fair notice of

11   what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555

12   (internal quotation marks and citation omitted). While Rule 8 does not require detailed

13   factual allegations, it demands more than "labels and conclusions" or a "formulaic

14   recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

15   (2009) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise

16   above the speculative level." *Twombly*, 550 U.S. at 555. When determining the

17   sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and

18   construe the pleadings in the light most favorable to the non-moving party[; however, this

19   tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations."

20   *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation

21   marks omitted). Thus, to survive a motion to dismiss, a complaint must contain sufficient

22   factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at

23   678 (internal quotation marks omitted).

24   In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to

25   apply when considering motions to dismiss. First, a district court must accept as true all

26   well-pleaded factual allegations in the complaint; however, legal conclusions are not

27   entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements

28   of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged — but not shown — that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)).

**B.    Analysis**

**1.    Count I: Operating a Pyramid Scheme**

Count I pertains only to MXI. Plaintiffs allege that MXI is a pyramid scheme in violation of NRS § 598.100(3), and therefore Plaintiffs are entitled to the return of any money paid to MXI pursuant to voidable and voided contracts. Nevada law defines a pyramid scheme as:

> [A]ny program or plan for the disposal or distribution of property and merchandise or property or merchandise by which a participant gives or pays a valuable consideration for the opportunity or chance to receive any compensation or thing of value in return for procuring or obtaining one or more additional persons to participate in the program, or for the opportunity to receive compensation of any kind when a person introduced to the program or plan by the participant procures or obtains a new participant in such a program.

Nev. Rev. Stat. § 598.100.

MXI makes several arguments in support of dismissal.

**a.    Statute of Limitations**

MXI's first argument is that NRS § 11.190(3)(a), which imposes a three year statute of limitations on actions based on liability created by statute, applies to count I. Therefore, MXI argues, the three year clock started running as soon as Plaintiffs

5

discovered or should have discovered that MXI was a pyramid scheme. (Dkt. no. 50 at 9.) Because Enrique Martinez[1] first joined MXI in 2008, and agreed to the policies and compensation schemes that Plaintiffs believe prove MXI is a pyramid scheme, Defendants contend that he should have been aware of any claims then. MXI does not appear to seek dismissal on the same grounds for Sunshine Martinez-Valdez's claim, but notes that it will likely eventually suffer the same infirmity. (Dkt. no. 72 at 9 n.1.) MXI also argues Enrique Martinez's initial agreement in 2008 was the only contract formed between the parties. (Dkt. no. 72 at 9.)

Plaintiffs' response is twofold. First, Plaintiffs argue that Nevada law clearly sets the start of the three year clock at "the last transaction or the last item charged or last credit given." (Dkt. no. 67 at 16.) Therefore, because Plaintiffs continued to transact with MXI into the period falling within the statute of limitations, they believe that the pleadings sufficiently state a claim entitling them to the return of all money paid pursuant to any agreements with MXI.[2]

Second, Plaintiffs argue that the clear language of NRS § 598.120 indicates that "all contracts and agreements" in a pyramid scheme are "against public policy and voidable by a participant" — in other words, that the statute of limitations does not apply to agreements made in a pyramid scheme. (*Id.* at 17.)

Though the allegation is somewhat buried, Plaintiffs' pleadings include an allegation that they continued to pay fees and purchase product from MXI after May 1, 2012. (Dkt. no. 1 ¶ 159.) The Court need not resolve, at this stage, whether the statute of limitations applies to contracts in a pyramid scheme, or how far back in time Plaintiffs, if successful, would be able to demand refunds. The Court finds that Plaintiffs have alleged that they paid enrollment fees and purchased products from an organization they

---

[1]Defendants note that, pursuant to MXI's policies, Enrique and Michelle Martinez formed a single "distributorship." MXI only allowed one distributorship to be operated by members of an immediate family. (Dkt. no. 50 at 10 n. 5.)

[2]In the alternative, Plaintiffs argue that they are at least entitled to any money exchanged pursuant to agreements after May 1, 2012, including annual fees and product purchases. (Dkt. no. 67 at 17-18.)

allege operates in violation of Nevada's statutory ban on pyramid schemes, and that they made those payments and purchases within three years of filing the Complaint. Without further discovery, the Court cannot conclude that Enrique Martinez knew or should have known about MXI's alleged problems in 2008, nor that his 2008 agreement with MXI is correctly understood as the only contract between the parties. Therefore, the Court finds that Plaintiffs have stated a plausible claim that MXI operates in violation of Nevada law and they may therefore be entitled to the return of at least some money.

### b.     Rescission

MXI also argues that count I should be dismissed because Plaintiffs are seeking rescission of their agreements with MXI, but have failed to tender (and may be unable to tender) return of the chocolate. (Dkt. no. 50 at 13.) Although NRS. § 598.120 does not explicitly require plaintiffs to return benefits in order to bring a claim, Defendants argue that the statutory remedy, rescission, incorporates such a requirement. Plaintiffs argue that rescission is an equitable remedy and can be tailored to particular circumstances, which means that there is no per se rule that they must allege tender or ability to tender. (Dkt. no. 67 at 25-28.)

Generally, the goal of rescission is to restore the status quo between the parties. However, "absolute and literal restoration of the parties to their former position is not required, and such restoration as is reasonably possible and demanded by the equities of the case is sufficient." *Mackintosh v. California Fed. Sav. & Loan Ass'n*, 935 P.2d 1154, 1163 (Nev. 1997). Additionally, "complete restoration is not necessary for rescission if the party that is not fully restored was actually at fault." *Graber v. Comstock Bank*, 905 P.2d 1112, 1116 (Nev. 1995).

Plaintiffs need not allege that they can tender return of any chocolate they purchased in order to state a claim for violation of NRS § 598.100(3). As an initial matter, Plaintiffs allege they paid some fees only for the purpose of membership and not in exchange for any of MXI's products. (Dkt. no. 1 ¶¶ 49-50.) Nothing would need to be returned to rescind these agreements because Plaintiffs were simply paying for the

ability to participate in MXI's marketing organization. Furthermore, to the extent that a balance of equities would involve calculating the costs of unreturned chocolate, the Court could calculate those costs and devise a remedy accordingly.

For these reasons the Court finds that Plaintiffs have adequately alleged that MXI operates as a pyramid scheme in violation of NRS § 598.100(3). Therefore MXI's motion (joined by a number of individual defendants) is denied in relation to count I.

### 2.    Count II: Consumer Fraud

Count II is pled against MXI and the Individual Defendants. (Dkt. no. 1 ¶ 174.) NRS § 41.600 allows victims of consumer fraud to recover damages, equitable relief, and reasonable attorneys' fees. To prove a consumer fraud claim, Plaintiffs must show (1) an act of consumer fraud by the defendant; that (2) caused; (3) damage to the plaintiff. *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009). NRS § 41.600 defines consumer fraud to include, among other things, a deceptive trade practice as defined by NRS 598.0923, which makes it illegal to "knowingly violat[e] a state or federal statute or regulation relating to the sale or lease of goods or services in the course of one's business." Put more simply, count II alleges that all defendants committed consumer fraud by knowingly operating and promoting an illegal pyramid scheme in violation of Nevada law, and that those actions damaged Plaintiffs.

### a.    Statute of Limitations

Consumer fraud under NRS § 41.600 is subject to a four-year statute of limitations. NRS. § 11.190(d). As with Count I, Defendants believe that the applicable clock should start running in 2008, when Enrique Martinez first joined MXI. (Dkt. no. 50 at 11-12.) As with Count I, the Court disagrees. Based on the allegations in the complaint, Plaintiffs continued to pay fees and purchase products from MXI after May, 2012. Plaintiffs argue that each of these transactions should be considered separate, actionable, events. Though discovery may show that these interactions should simply be considered part of the original 2008 agreement, at this stage, based on the Complaint, Plaintiffs' characterization is plausible and adequately plead. For the same reasons the

1  Court finds these allegations sufficient to support count I, the Court also finds them

2  sufficient to support count II.

3  **b.    Particularity and Rule 9(b)**

4          Defendants argue that Rule 9(b) requires that count II be plead with particularity,

5  and that Plaintiffs have failed to do so. Plaintiffs respond that count II is not governed by

6  Rule 9(b) and, even if it is, the allegations are sufficiently precise.

7          Fed. R. Civ. P. 9(b) applies where a plaintiff alleges fraud. *Destfino v. Reiswig*,

8  630 F.3d 952, 958 (9th Cir. 2011). The purpose of Rule  9(b) is to provide defendants

9  with adequate notice, deter plaintiffs from using complaints as a fishing expedition,

10  protect those whose reputation would be harmed as a result of being subject to fraud

11  charges, and prevent plaintiffs from "unilaterally imposing upon the court, the parties and

12  society enormous social and economic costs absent some factual basis." *In re Stac*

13  *Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir.1996) (quoting *Semegen v. Weidner*, 780

14  F.2d 727, 731 (9th Cir.1985)). Rule 9(b) "does not allow a complaint to ... lump multiple

15  defendants together but require[s] plaintiffs to differentiate their allegations when suing

16  more than one defendant." *Cisneros v. Instant Capital Funding Grp., Inc.*, 263 F.R.D.

17  595, 606–07 (E.D.Cal.2009) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th

18  Cir.2007) (internal quotation marks omitted)). As long as the complaint sufficiently

19  describes the circumstances of the alleged fraud so that Defendants are able to

20  understand them and respond, the complaint meets the particularity requirement of Rule

21  9(b). *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997).

22          The Court agrees that Rule 9(b) governs a consumer fraud claim, even one like

23  this which is ultimately based on the operation of a pyramid scheme. *Cf. Miron v.*

24  *Herbalife Int'l, Inc.*, 11 Fed. App'x 927, 930 (9th Cir.2001) (applying Rule 9(b) to a

25  complaint alleging existence of a pyramid scheme under federal law). However, the

26  Court disagrees with the various Defendants' assertions that Plaintiffs must plead

27  ///

28  ///

9

1   elements other than 1) Defendants operated and promoted a pyramid scheme which 2)

2   caused 3) damage to Plaintiffs.[3]

3          The fraud underlying this claim is the operation and promotion of a pyramid

4   scheme, and *that* is what must be plead with particularity. Count II is not based on

5   fraudulent statements. It is based on the operation and promotion of a business scheme

6   which the Nevada legislature has deemed inherently fraudulent. Consequently, whether

7   the Individual Defendants made statements which were false or mere "puffery" is beside

8   the point. The issue is whether Plaintiffs have adequately alleged that Defendants,

9   through their statements or otherwise, have operated and promoted a business which

10  violates Nevada law.

11         The Complaint lays out Plaintiffs' allegations concerning MXI's operation as a

12  pyramid scheme in great detail. Plaintiffs spend 19 pages describing the structure of

13  MXI, its various compensation programs, wholesale prices, retail prices, training

14  material, and advertising. (Dkt. no. 1 at 11-30.) Plaintiffs identified the Nevada statutes

15  they believe MXI has violated and the basis for their allegations. The complaint

16  sufficiently describes the circumstances of the alleged fraud so that Defendants

17  understand the nature and contours of the allegations and may adequately respond.

18                          **c.    Specificity**

19         Defendants Martin Brooks, Jeanette Brooks, and Andrew Brooks argue that the

20  complaint fails to identify specific conduct in which they were engaged. (Dkt. no. 50 at 6.)

21  The remaining Individual Defendants similarly argue that Plaintiffs have only put forth

22  general, undifferentiated allegations. (Dkt. no. 54 at 5; dkt. no. 57 at 5.) Plaintiffs argue

23  that they have pled facts which indicate each defendant operated, advertised, and/or

24  promoted a pyramid scheme in violation of state and federal law. (Dkt. no. 67 at 24.)

25  ///

26

27         [3]Defendants argue that Plaintiffs must also plead individualized reliance by each
    plaintiff and (dkt. no. 50 at 15) knowingly false statements by the Defendants. (*id*; dkt.
28  no. 54 at 5; dkt. no. 57 at 4).

1    The Court finds that the Plaintiff has plead specific facts which, if taken as true,

2    could support a finding that most, but not all, of the named defendants operated,

3    advertised, or promoted an illegal pyramid scheme. This, in turn, fulfills the requirements

4    for a consumer fraud claim based on NRS § 41.600.

5    Plaintiffs have alleged that Martin, Jeanette, and Andrew Brooks co-founded MXI,

6    acted (or currently act) as officers, developed and approved MXI's policies and

7    procedures and compensation plan, and currently direct MXI's operations. (Dkt. no. 1 ¶

8    112.) Plaintiffs have further alleged that Jeanette Brooks appears at conferences to

9    recruit new participants and encourages current participants to recruit more members,

10    (*id.* at ¶ 113), and that Andrew Brooks produces YouTube videos encouraging

11    participants to recruit new members (*id.* at ¶ 114).

12    Plaintiffs have also alleged that Gordon Pederson, Jeremy Reynolds, Connie

13    Hollstein, Sherman Smith, Ruth Smith, Paul Engemann, William Swaby, Felix Gudino,

14    Glen Overton, Adam Green, Derrick Winkel, Paul Engemann, Paula Pritchard, Kathleen

15    Robbins, and Sandy Chambers produced YouTube videos promoting MXI and recruiting

16    new participants. (*Id.* at ¶¶ 115, 127.) The Complaint lists specific examples of

17    promotions and endorsements from each of these defendants and provides links to

18    specific YouTube videos. (*Id.*)

19    Additionally, Plaintiffs allege that Paula Pritchard, Kathleen Robbins, Ian Murray,

20    Judy Murray, Sandy Chambers, and Kerry Dean belong to an organization called Global

21    Partners Group, which helps multi-level marketing organizations promote their

22    businesses. (*Id.* at 117.) According to the Complaint, these defendants helped

23    developed MXI's policies and compensation plan. (*Id.*)

24    However, the Complaint does not contain specific claims alleging that Carolyn

25    Swaby, Lisa Gudino, Kim Overton, Karen Reynolds, Naomi Winkel, Suzanne Engemann,

26    or Melanie Green advertised or promoted MXI. Plaintiffs have only alleged that these

27    defendants were members of MXI and were married to MXI members who promoted

28    MXI in various ways. (*Id.* at ¶¶ 27-33.) Melanie Green's name also appears in a website

promoting MXI. (*Id.* at 127.) But simply being a member of a pyramid scheme does not mean that one knowingly operated or promoted it. Indeed, Plaintiffs themselves were members of MXI. The only mention of behavior specific to these defendants is a cursory allegation that a number of defendants "along with their spouses" promoted MXI. (*Id.* at ¶ 116)  This type of "formulaic recitation" is not enough to sustain a claim. *Iqbal*, 556 U.S. at 678.

Therefore Defendants' motions to dismiss are granted with respect to Carolyn Swaby, Lisa Gudino, Kim Overton, Karen Reynolds, Naomi Winkel, Suzanne Engemann, and Melanie Green.  Count II with respect to these defendants will be dismissed without prejudice and Plaintiffs will be permitted to amend the Complaint to include more detailed allegations if they so choose.

### 3.    Proper Defendants

Defendants Paula Pritchard, Kathleen Robbins, Ian Murray, and Kerry Dean argue that they are not proper defendants because they conducted business with MXI through various corporate entities. (Dkt. no. 57 at 9-9.).

At this stage in the litigation the Court must generally accept Plaintiffs' allegations in the Complaint as true. *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011). Plaintiffs have asserted count II against these defendants individually and has pled facts that support each element of a consumer fraud claim. Whether defendants were acting in their individual capacity or on behalf of a corporation is a factual dispute that is not suited for resolution on a motion to dismiss.

### 4.    Counts III and IV: RICO

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 – 1968, creates a civil right of action to recover damages for injury based on racketeering activity. The elements of a properly pled RICO claim include allegations of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's "business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). "Racketeering activity" includes acts that are

1    indictable under certain specified provisions of Title 18 of the United States Code,

2    including mail and wire fraud. *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th

3    Cir.1987).

4         Plaintiffs seek to bring two counts based on RICO. Count III of Plaintiff's

5    Complaint is based on §1962(c), which involves participating in the conduct of an

6    enterprise's affairs through a pattern of racketeering activity. (Dkt. no. 1 ¶¶ 179-81.)

7    Count IV is based on §1962(d), which makes it unlawful to conspire to engage in the

8    acts described in Count III. (*Id.* ¶¶ 182-90.)

9         Defendants raise several objections to Plaintiffs RICO claims in counts III and IV.

10   First, they argue that the Private Securities Litigation Reform Act ("PSLRA") amended

11   RICO to preclude the type of claim Plaintiffs seek to bring. Next, they argue that even if

12   the PSLRA does not apply, Plaintiffs have failed to plead their RICO claims with

13   particularity and have failed to plead each necessary element. The Court will first

14   consider the threshold argument that the claims are barred by the PSLRA.

15        Congress passed the PSLRA in 1995. Section 1964(c) of the PSLRA "amended

16   RICO so that 'no person may rely upon any conduct that would have been actionable as

17   fraud in the purchase or sale of securities to establish a violation of [18 U.S.C.] § 1962.' "

18   *Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) (quoting 18 U.S.C. §

19   1964(c) (Supp. II 1996)). In other words, the PSLRA "eliminate[s] any conduct actionable

20   as fraud in the purchase or sale of securities as a predicate act for a private cause of

21   action under RICO." *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327

22   (3d Cir.1999) (internal citation omitted).

23        An investment contract is a security for purposes of federal securities law. *S.E.C.*

24   *v. W.J. Howey Co.*, 328 U.S. 293, 296, 301 (1946). Under the *Howey* test, "an

25   investment contract … means a contract, transaction or scheme whereby a person

26   invests his money in a common enterprise and is led to expect profits solely from the

27   efforts of the promoter or a third party." *Id.* at 298–99.

28   ///

13

Applying *Howey*, the Ninth Circuit has held that investments in a pyramid scheme were "investment contracts," and were therefore securities. *S.E.C. v. Glenn W. Turner Enters.*, Inc., 474 F.2d 476 (9th Cir. 1973). The court in *Glenn W. Turner* came to this conclusion even though the contracts at issue required some effort on the investor's part to recruit new participants. The court interpreted the "solely from the efforts of the promoter or a third party" portion of the *Howey* test broadly. It stated that it "should not be read as a strict or literal limitation on the definition of an investment contract, but rather must be construed realistically, so as to include within the definition those schemes which involve in substance, if not form, securities." *Id.* at 482.

Two decades later, the Ninth Circuit once again addressed the interaction of securities law and pyramid schemes. In *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996), the court reiterated that investments in pyramid schemes are investment contracts. *Id.* at 784 ("[i]f Omnitrition's program is a pyramid scheme, investments in the program's supervisor positions are securities."). *Omnitrition* described the holding of *Glenn W. Turner* in broad language: "we declared that investments in a pyramid scheme were 'investment contracts' and thus securities within the meaning of the federal securities laws." *Id.* The court further clarified: "[b]y the very structure of a pyramid scheme, participants' efforts are focused not on selling products but on recruiting others to join the scheme. Under the reasoning of *Glenn W. Turner*, this is enough to bring investments in the program within the definition of "investment contracts." *Id.*

Plaintiffs ask this Court to read *Glenn W. Turner* and *Omnitrition* narrowly. Essentially Plaintiffs argue that those cases simply hold that investments in a pyramid scheme *may* constitute a security, not that they always necessarily constitute a security. Therefore, Plaintiffs argue that this Court should follow the lead of a decision from a district court in another circuit, deny the motion, and permit discovery in order to determine whether the MXI agreements actually constitute investment contracts for the purposes of the PLRSA. (Dkt. no. 67 at 30 (citing *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580 (E.D. Mich. 2015).)

1    Defendants argue that *Glenn W. Turner* and *Omnitrition* should be understood as

2  creating a rule that an investment in a pyramid scheme is per se an investment contract

3  and a security. This would mean that operating a pyramid scheme would constitute

4  securities fraud and would be actionable under the PLRSA and not under RICO.

5    The Court finds that the broad language of *Omnitrition* supports the Defendants'

6  position. The Ninth Circuit has clearly taken the position that investments in pyramid

7  schemes are securities as a result of the nature of pyramid schemes, rather than the

8  specifics of any agreements. As a consequence, the PSLRA is the correct vehicle for a

9  challenge based on the operation of a pyramid scheme rather than RICO. Therefore,

10 Defendants are correct when they argue that counts III and IV should be dismissed.

11 They are incorrect, however, in arguing that they should be dismissed with prejudice.

12 Plaintiffs may be able to restructure their claims under the PLRSA, and accept the

13 additional procedural requirements and restrictions, if they so choose.

14    **C.    Leave to Amend**

15    If the court grants a motion to dismiss, it must then decide whether to grant leave

16 to amend. The court should "freely give" leave to amend when there is no "undue delay,

17 bad faith[,] dilatory motive on the part of the movant, repeated failure to cure deficiencies

18 by amendments previously allowed, undue prejudice to the opposing party by virtue of . .

19 . the amendment, [or] futility of the amendment." Fed. R. Civ. P. 15(a); *Foman v. Davis*,

20 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that

21 the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow*

22 *Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

23    For the reasons discussed above, the Court grants Plaintiffs leave to amend the

24 claims that have been dismissed.

25 **IV.    CONCLUSION**

26    The Court notes that the parties made several arguments and cited to several

27 cases not discussed above. The Court has reviewed these arguments and cases and

28 ///

determines that they do not warrant discussion as they do not affect the outcome of the motions to dismiss.

It is ordered that Defendants' motions to dismiss (dkt. nos. 50, 54, 57) are granted with respect to counts III and IV. Counts III and IV are dismissed without prejudice.

It is further ordered that Defendants' motions to dismiss are granted with respect to count II against individual defendants Carolyn Swaby, Lisa Gudino, Kim Overton, Karen Reynolds, Naomi Winkel, Suzanne Engemann, and Melanie Green.

Plaintiffs may file an amended complaint within fifteen (15) days of this Order if they so choose. If Plaintiffs fail to amend their Complaint, this case will proceed on the counts that survive dismissal.

DATED THIS 9th day of March 2016.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

16